```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF IOWA
 2                    CEDAR RAPIDS DIVISION

 3    United States of America,

 4              Plaintiff,        No. CR11-2025-8 LRR

 5        vs.

 6    Arthur Scott, Rochester
      Mitchell, Edward Sapp,
 7    and Lawrence Johnson,

 8              Defendants.

 9                     *    *    *    *    *

10              Transcript of proceedings held at the

11    Federal Courthouse, Cedar Rapids, Iowa, on the 26th

12    day of April, 2011, commencing at 9:00 a.m.

13                     *    *    *    *    *

14    Before:  Magistrate Judge Jon S. Scoles

15                     *    *    *    *    *

16

17

18

19

20

21

22

23

24                     *    *    *    *    *

25    Transcript ordered the 6th of May, 2011.
      Transcript delivered the 17th day of May, 2011.
```

```
 1                A P P E A R A N C E S

 2   Daniel A. Chatham
     Assistant US Attorney
 3   401 First Street SE, Suite 400
     Cedar Rapids, Iowa 52401        for USA.
 4
     Jane Kelly
 5   Assistant Federal Public Defender
     320 Third Street SE, Suite 200
 6   Cedar Rapids, Iowa 52401        for Scott.

 7   James Bryson Clements
     Attorney at Law
 8   1503 Brady Street
     Davenport, Iowa 52803          for Mitchell.
 9
     E. Daniel O'Brien
10   Attorney at Law
     1231 Park Place NE, Suite D
11   Cedar Rapids, Iowa 52402        for Sapp.

12   Webb L. Wassmer
     Attorney at Law
13   115 Third Street SE, Suite 1200
     Cedar Rapids, Iowa 52401        for Johnson.
14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                          INDEX

 2   Witness by:                                Page

 3   BRYAN FURMAN

 4     Direct Examination by Mr. Chatham.......   3

 5     Cross-Examination by Ms. Kelly..........  17

 6     Cross-Examination by Mr. Clements.......  21

 7     Cross-Examination by Mr. O'Brien........  22

 8     Cross-Examination by Mr. Wassmer........  25

 9                   *    *    *    *    *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1          THE CLERK:  All rise.  The United States

 2    District Court for the Northern District of Iowa is

 3    now in session.  The Honorable Magistrate Judge Jon

 4    Stuart Scoles presiding.

 5          THE COURT:  Please be seated.

 6          The matter now before the Court is the case

 7    entitled United States of America versus Arthur

 8    Scott, Rochester Mitchell, Edward Sapp, and Lawrence

 9    Johnson, Number CR11, dash, 2025.  This matter comes

10    on for a detention hearing at this time.

11          The government is represented by Special

12    Assistant United States Attorney Daniel Chatham.

13    Defendant Scott appears in court and is represented

14    by Attorney Jane Kelly.

15          Defendant Mitchell appears and is

16    represented by Attorney James Clements.  Defendant

17    Sapp appears and is represented by Attorney Dan

18    O'Brien.  And Defendant Johnson appears and is

19    represented by Attorney Webb Wassmer.

20          This matter is scheduled for a trial on

21    June 20.  The issue before the Court today is whether

22    one or more of the defendants will be detained

23    pending that trial.

24          Are the parties prepared to proceed?

25          MR. CHATHAM:  Yes, Your Honor.

```
 1           THE COURT:  And I guess my intention here is
 2    I'm going to try to do this all in one big hearing,
 3    even though it's a little bit cumbersome.  But the
 4    government will offer its evidence, and then the
 5    witnesses can be cross-examined in the order that
 6    their defendants are listed on the caption.
 7           So Ms. Kelly will question first and then
 8    Mr. Clements and then Mr. O'Brien and then
 9    Mr. Wassmer.  And if the defendants have any
10    evidence, they will present evidence in the same
11    order.
12           Ms. Kelly, are you prepared to proceed?
13           MS. KELLY:  Yes.
14           THE COURT:  And do Mr. O'Brien and Ms. Kelly
15    both have lavalier mikes?  Is that right?
16           MS. KELLY:  Yes.
17           MR. O'BRIEN:  Yes.
18           THE COURT:  All right.  And, Mr. Clements,
19    are you prepared to proceed?
20           MR. CLEMENTS:  Yes, Your Honor.
21           THE COURT:  Mr. O'Brien?
22           MR. O'BRIEN:  Yes.
23           THE COURT:  And, Mr. Wassmer?
24           MR. WASSMER:  Yes, Your Honor.
25           THE COURT:  Mr. Chatham.
```

1          MR. CHATHAM:  The United States calls Bryan
2     Furman.

3          THE COURT:  Sir, if you'll step right over
4     here, please.  Raise your right hand.

5                     BRYAN FURMAN,
6     being produced, sworn as hereinafter certified, was
7     examined and testified as follows:

8          THE COURT:  Please be seated.

9                  DIRECT EXAMINATION

10    BY MR. CHATHAM:

11    Q.     Would you please state your name and spell
12    your last for the record.

13    A.     Bryan, B-R-Y-A-N, Furman, F-U-R-M-A-N.

14    Q.     Are you the case agent in the case for the
15    four defendants here today?

16    A.     Yes, I am.

17    Q.     Can you explain to the Court generally how
18    this investigation began?

19    A.     We began making controlled purchases of
20    heroin on May 13th, 2010.

21    Q.     And from there, the -- did the investigation
22    progress to wiretap intercepts of a number of
23    different cellular telephones?

24    A.     Yes.

25    Q.     Did the -- After the wiretap, were there

1    additional controlled purchases of heroin?

2    A.       Yes.

3    Q.       Can you explain generally the process of a

4    controlled buy?

5    A.       A controlled buy would consist of either

6    using an undercover officer or an informant or both.

7    If an informant is used, the informant would be

8    brought in with the agents.  A controlled phone call

9    would be made to the target.

10        During that phone call, things would be

11   discussed, such as, quantity, price, and location for

12   a meeting.  From there, the informant is searched to

13   ensure no contraband is taken into the controlled

14   purchase.

15        The informant then is either transported or

16   transports themselves to a meeting location where

17   they meet with the target.  They conduct the

18   purchase.  During this time, they are followed by

19   surveillance agents.  And the controlled purchase is

20   monitored and surveilled by agents at the scene.

21        After the purchase, the informant or UC is

22   followed back.  Again, searched.  If the informant

23   drives their own vehicle, that is searched before and

24   after, as well.

25   Q.       Have -- Were there any large quantities of

1    heroin seized in this case?

2    A.      Yes, there were.

3    Q.      And can you explain or give an example of

4    that?

5    A.      On November 9th, the Cedar Rapids office

6    coordinated with the Memphis office.  During that

7    coordination, Memphis was able to seize slightly

8    under two kilos of heroin and two handguns.

9    Q.      And that's Memphis, Tennessee?

10    A.      Yes.

11    Q.      And since it happened in Tennessee, what was

12    the connection to the Northern District of Iowa?

13    A.      Through the investigation, we knew that a

14    portion of that heroin that was seized was destined

15    for the Waterloo/Cedar Rapids area.

16    Q.      Are you familiar with the dangers of heroin

17    use?

18    A.      Yes, I am.

19    Q.      And is that through your training and

20    experience?

21    A.      Yes.

22    Q.      Can you generally describe the dangers of

23    heroin use?

24    A.      Outside of other narcotics uses, it's

25    extremely addictive.  Generally those that use heroin

1    become addicted to heroin.  The risk of overdose and

2    potential death is much higher than other narcotics.

3    Q.        And what's a common dosage unit of heroin?

4    A.        Generally, through this case, we've seen

5    users purchase either foil, bag or straw.  Those

6    consist of generally .2 grams of heroin.

7    Q.        So when you're talking about just under two

8    kilograms of heroin, you're talking not a whole lot

9    of dosage units for an average user?

10   A.        Yes.

11   Q.        Let's focus in on the specific defendants we

12   have here.  Was Arthur Scott one of the targets of

13   the investigation?

14   A.        Yes.

15   Q.        And was he actually one of the people whose

16   phones was tapped?

17   A.        Yes.

18   Q.        And that was a court-authorized wiretap?

19   A.        Yes.

20   Q.        And were there a number of incriminating

21   telephone calls that came across on that wire?

22   A.        Yes.

23   Q.        Was there also surveillance done during the

24   course of the wiretap?

25   A.        Yes.

1    Q.       Based on the surveillance and the

2    intercepted telephone calls, what's your

3    understanding of Mr. Scott's involvement in heroin

4    distribution?

5    A.       Throughout the investigation, we learned

6    that Mr. Scott was supplying lower-level user

7    quantities, several of those, as well as other source

8    of supply in the Waterloo, Iowa area.

9    Q.       So he was supplying both users and dealers?

10   A.       Yes.

11   Q.       Did he have anybody working for him?

12   A.       Yes.

13   Q.       And in what manner were people working for

14   him?

15   A.       Transportation.  He would also defer calls

16   to other people that were working for him to supply

17   all those other people.

18   Q.       Were there any search warrants conducted of

19   Mr. Scott's residence?

20   A.       Yes.

21   Q.       And when was that?

22   A.       On February 15th.

23   Q.       Of 2011?

24   A.       Yes.

25   Q.       What was found in that search?

```
 1    A.        During that search, packaging material was
 2    located, other drug paraphernalia was located.
 3    Q.        No heroin?
 4    A.        No.
 5    Q.        Was there an interview done with the
 6    defendant?
 7    A.        Yes.
 8    Q.        Did the defendant make any admission?  Did
 9    Mr. Scott make any admissions during this interview
10    as to his heroin sales?
11    A.        Yes.
12    Q.        What did he say?
13    A.        He confirmed a lot of the information that
14    we believed to be true, as far as his activities
15    selling and distributing heroin in Waterloo.
16    Q.        Did he talk about quantities that he was
17    selling?
18    A.        Yes, he did.
19    Q.        And what type of quantities was that?
20    A.        In particular, we discussed another subject
21    involved.  He stated that approximately every two
22    days he would meet with this subject and purchase six
23    grams of heroin and make a payment to them on a
24    consistent basis.
25    Q.        And over what time period was that?
```

1   A.      The time frame with that subject was from

2   November 2010 to the time of the search warrant.

3   Q.      Is it your understanding that Mr. Scott is a

4   heroin user?

5   A.      Yes, he is.

6   Q.      For a significant period of time?

7   A.      Yes.

8   Q.      Let's talk, then, about Rochester Mitchell

9   and Ed Sapp.  Were both of those individuals

10  intercepted during the wiretaps?

11  A.      Yes, they were.

12  Q.      Over whose phones, if you recall?

13  A.      Arthur Scott's phone.

14  Q.      What -- Based on the surveillance and

15  intercepted phone calls, what's your understanding of

16  Mr. Mitchell's and Mr. Sapp's relative roles in the

17  conspiracy?

18  A.      Mr. Mitchell and Mr. Sapp were selling

19  heroin from a location where Mr. Sapp was residing,

20  at 117 and a half Lafayette in Waterloo.

21  Q.      And was one person or the other primarily

22  selling, or what were they -- what was the

23  relationship between the two of them?

24  A.      They were partners.  I believe that

25  Mr. Mitchell was the -- I guess, the leader.

1    However, they were both partners working in

2    conjunction with each other.

3    Q.       Was there a search warrant ever done at

4    Mr. Sapp's house?

5    A.       Yes, there was.

6    Q.       And when was that?

7    A.       Again, on February 15th.

8    Q.       Again, of 2011?

9    A.       Yes.

10   Q.       And what was found in that search warrant?

11   A.       Ten foils of heroin, packaging material, and

12   also items used to package for sales.

13   Q.       And when you say "ten foils," about how much

14   heroin is that?

15   A.       Approximately .2 grams per foil.  So two

16   grams.

17   Q.       Was there ever a search done at

18   Mr. Mitchell's house?

19   A.       Yes.

20   Q.       On that same date, February 15th?

21   A.       Yes.

22   Q.       What was found during that search?

23   A.       In his pocket were 31 foils of heroin.

24   Q.       Was there anything else found?

25   A.       To the best of my memory, I don't recall.

```
 1   Q.        Was there methadone found?

 2   A.        Yes, there was.

 3   Q.        Any cutting agents found?

 4   A.        I believe there was some Dormin found there

 5   as well.

 6   Q.        And what is Dormin?

 7   A.        Dormin is commonly used as a cutting agent

 8   to expand the amount of heroin that they have to

 9   sell.  They would take a more pure quantity of

10   heroin, use the Dormin to essentially make, for

11   example, one gram into two grams.

12   Q.        Is Dormin a -- typically a sleeping pill?

13   A.        Yes.

14   Q.        Was there -- Were there ever any controlled

15   transactions relating to Mr. Mitchell and Mr. Sapp?

16   A.        Yes, there were.

17   Q.        And did those occur on January 7th, 10th,

18   and 27th of 2011?

19   A.        Yes.

20   Q.        And those were all CI buys?

21   A.        Yes.

22   Q.        And were both Mr. Mitchell and Mr. Sapp

23   involved in each of those transactions?

24   A.        Yes, they were.

25   Q.        Was there another instance where
```

1   Mr. Mitchell was arrested or found to have heroin in

2   his possession?

3   A.       Yes, there was.

4   Q.       And when was that?

5   A.       I don't recall the date. He was interdicted

6   with the Tri-County Drug Task Force located in

7   Waterloo, arriving from Chicago back to Waterloo

8   transporting heroin.

9   Q.       And interdicted in -- Was he in a car or --

10   A.       He was traveling on the bus between Chicago

11   and Waterloo. Mr. Sapp arrived to retrieve him from

12   the bus stop.

13   Q.       And how much heroin was found?

14   A.       Approximately seven grams.

15   Q.       Is it your understanding that both

16   Mr. Mitchell and Mr. Sapp are heroin users?

17   A.       Yes.

18   Q.       And have been for a while?

19   A.       Yes.

20   Q.       Let's talk, then, about Mr. Johnson. Was

21   Mr. Johnson intercepted on the wiretaps?

22   A.       No, he was not.

23   Q.       So how -- What's his relative placement in

24   this conspiracy?

25   A.       Through the course of the investigation, it

1   was learned that at times when others involved in the
2   conspiracy weren't able to get heroin from their
3   normal sources, he would supply heroin through some
4   of the other organization members.
5   Q.      So he's sort of the alternate source?
6   A.      Yes.
7   Q.      Were there any controlled buys conducted
8   from Mr. Johnson?
9   A.      Yes.
10  Q.      And did that happen on January 12th of 2011?
11  A.      Yes, it did.
12  Q.      And how much heroin was purchased from
13  Mr. Johnson on that day?
14  A.      We purchased ten foils, approximately two
15  grams.
16  Q.      And for how much?
17  A.      $200.
18  Q.      Were there any search warrants done at
19  Mr. Johnson's residence?
20  A.      Yes, there was.
21  Q.      And what was found in that search warrant?
22  A.      Seven foils, seven additional foils of
23  heroin, as well as a handgun.
24  Q.      And was that search also conducted on
25  February 15th of 2011?

1     A.        Yes.

2     Q.        Was the handgun loaded?

3     A.        Yes.

4     Q.        Was the defendant interviewed?  "The

5     defendant," being Mr. Johnson.  Was Mr. Johnson

6     interviewed on February 15th?

7     A.        Yes, he was.

8     Q.        Did he make any admissions as to the gun?

9     A.        Yes, he did.

10    Q.        And what did he say?

11    A.        He told the agents that he had purchased the

12    gun on the street.  The reason for the purchase was

13    for protection.

14    Q.        Is it your understanding that Mr. Johnson is

15    a heroin user?

16    A.        Yes, he is.

17              MR. CHATHAM:  Nothing further, Your Honor.

18              THE COURT:  Ms. Kelly.

19              MS. KELLY:  Thank you.

20                        CROSS-EXAMINATION

21    BY MS. KELLY:

22    Q.        Agent, you've testified about a search --

23              THE COURT:  Do you have your microphone on?

24              MS. KELLY:  I apologize.  I do now.

25    BY MS. KELLY:

1    Q.        Agent, you've testified about a search at

2    Arthur Scott's residence; correct?

3    A.        Yes.

4    Q.        And you have said that you found no heroin

5    at that residence?

6    A.        Correct.

7    Q.        And what was the date of that search?

8    A.        February 15th, 2011.

9    Q.        You've also testified that you spoke with

10   Mr. Scott; correct?

11   A.        Yes.

12   Q.        What date was that?

13   A.        We spoke with him several times.

14   Q.        Do you know how many times?

15   A.        I believe we met with him approximately two

16   to three times.

17   Q.        And he voluntarily met with you on each of

18   those occasions?

19   A.        Yes.

20   Q.        So since February 15th of this year,

21   Mr. Scott has been aware that he is under

22   investigation?

23   A.        Yes.

24   Q.        And you've seen no indication that he's

25   attempted to leave the area?

1   A.          Correct.

2   Q.          When an arrest warrant was issued for

3   Mr. Scott, I assume that came after the indictment

4   was filed on the 19th of this month?

5   A.          Yes.

6   Q.          Did Mr. -- Did you have contact with

7   Mr. Scott around that time?

8   A.          Generally, yes.

9   Q.          And did he make arrangements with you to

10  make sure he could turn himself in or that he would

11  be available for the officers so that they could take

12  him into custody?

13  A.          Yes.

14  Q.          So he was assisting in that process?

15  A.          Yes.

16  Q.          And has he been generally cooperative with

17  you and the other officers and agents in speaking

18  with you and making arrangements to talk?

19  A.          In regards to making arrangements to talk,

20  yes.

21  Q.          The indictment alleges a conspiracy that

22  purportedly began in January of 2007; correct?

23  A.          Correct.

24  Q.          Now, you've testified that you began

25  controlled buys in May of 2010?

1    A.        Correct.

2    Q.        Did you also conduct investigations that

3    predated May 2010?

4    A.        The investigation that was conducted

5    reference that time was a compilation of intelligence

6    and reports done by the Tri-County Drug Task Force

7    who worked the area of Waterloo, Iowa.

8    Q.        So they had already gathered information

9    that then you used in your investigation that began

10   roughly in May of 2010?

11   A.        Yes.

12   Q.        And so you are relying also on that

13   information in understanding the scope of what you

14   believe this conspiracy to be?

15   A.        In part.

16   Q.        And in that information -- in that -- In

17   those reports in that investigation, did you learn

18   that Mr. Scott was actually employed full-time from

19   2000 to 2008?

20   A.        I believe we spoke with him, and he stated

21   that he had been.

22   Q.        And so that was not in any of the

23   investigative reports prior to that, that he was

24   working full-time until December of 2008?

25   A.        At the time of that investigation, it really

1   didn't have any bearing whether or not he was

2   working.  Our investigation was based on his

3   extracurricular narcotics trafficking.

4   Q.      So you didn't monitor where else he was

5   spending his time during the days?

6   A.      When we began the investigation, he was no

7   longer working.

8   Q.      I'm sorry.  I mis- --

9   A.      When we began our investigation, he was no

10  longer working.

11  Q.      When you began in 2010?

12  A.      Yes.

13          MS. KELLY:  I have nothing further.  Thank

14  you.

15          THE COURT:  Mr. Clements.

16          MR. CLEMENTS:  Thank you.

17                          CROSS-EXAMINATION

18  BY MR. CLEMENTS:

19  Q.      You've described a couple things regarding

20  Mr. Mitchell.  And you indicated that he was

21  intercepted on a bus from Chicago.  And you indicated

22  that you couldn't remember when that was.  Could you

23  give us an approximate time of when that was?

24  A.      Oh, I believe it was in the last 30 days.  I

25  can't be exact.  It completely slips my mind.  I just

1    looked yesterday.

2    Q.    Everything that I've heard regarding

3    Mr. Mitchell appears to have happened in the year

4    2011.  When are you alleging that Mr. Mitchell began

5    participating in this conspiracy?

6    A.    2008.

7    Q.    Now, you indicated that there was a search

8    of my client's house and that foils of heroin were

9    found in his pocket.  Did he make any admissions or

10   statements to you at that time?

11   A.    No, he did not.

12   Q.    The three controlled buys that you described

13   involving Mr. Mitchell and Mr. Sapp, were both of

14   them involved in all three of those controlled buys?

15   A.    Yes.

16         MR. CLEMENTS:  No other questions.

17         THE COURT:  Mr. O'Brien.

18                   CROSS-EXAMINATION

19   BY MR. O'BRIEN:

20   Q.    Have you talked with Mr. -- Have you had any

21   interviews with Mr. Sapp?

22   A.    We attempted to interview him the day of the

23   bus interdiction.

24   Q.    And did he talk with you at that time?

25   A.    No, he did not.

1   Q.      On that date at the bus interdiction, did he

2   have any heroin in his possession?

3   A.      I don't believe so, no.

4   Q.      He didn't have any other narcotics in his

5   possession?

6   A.      No.

7   Q.      Didn't have any firearms in his possession?

8   A.      No.

9   Q.      On the search warrant that was conducted,

10  was Mr. Sapp at home on that date?

11  A.      Yes.

12  Q.      You didn't talk to him that date?

13  A.      The agents that served the warrant did speak

14  with him.

15  Q.      Did he make any statements?

16  A.      I believe he stated that he was a heroin

17  user or denied any involvement in the conspiracy-type

18  situation.

19  Q.      The amount of heroin that was found there

20  was user-type quantities?

21  A.      No.  They located ten foils, approximately

22  two grams.

23  Q.      Ten foils.  One foil would be like one hit

24  or one use?

25  A.      Depending on the purity.

1   Q.      On the wiretap, when that went up, that was

2   back in -- when of 2010?

3   A.      I'm sorry?

4   Q.      When did the wiretap go into effect?

5   A.      The first Title III went up, I believe,

6   September 23rd or thereabouts.

7   Q.      2010?

8   A.      Yes.

9   Q.      When was Mr. Sapp first appearing on the

10  wiretaps?

11  A.      I don't have that information in front of

12  me.

13  Q.      And Mr. Sapp, has he been aware that he's

14  been under investigation since the search warrant?

15  A.      Well, I would assume so.

16  Q.      And he hasn't made any attempt to flee, that

17  you know of?

18  A.      Not that I'm aware of.

19  Q.      And in 2010 and prior years, Mr. Sapp -- did

20  you know he was working at Tyson's Foods?

21  A.      I believe he told the agents during the

22  search warrant that he had been.

23          MR. O'BRIEN:  I don't have any additional

24  questions.

25          THE COURT:  Mr. Wassmer.

1          MR. WASSMER:  Thank you, Your Honor.

2                    CROSS-EXAMINATION

3    BY MR. WASSMER:

4    Q.       You mentioned that Mr. Johnson had not been

5    intercepted on any of the wiretaps; is that correct?

6    A.       Correct.

7    Q.       How many hours of tape-recorded

8    conversations were there total?

9    A.       I could guess, but it's --

10   Q.       Give me a rough guess.

11   A.       I can't do it.

12   Q.       Okay.  Are we talking hundreds of hours,

13   thousands of hours?

14   A.       From September 27th, 29th, thereabouts,

15   until March 9th.  It would have been 16 hours a day,

16   generally seven days a week.

17   Q.       Okay.  And Mr. Johnson is not on any of

18   those wiretaps; correct?

19   A.       Correct.

20   Q.       Were there also text messages intercepted?

21   A.       Yes.

22   Q.       Any text messages to or from Mr. Johnson?

23   A.       No.

24   Q.       When Mr. Johnson -- When the search warrant

25   was executed on February 15th, information from his

1   cell phone was downloaded; correct?

2   A.      I would guess yes.  I don't know for sure.

3   That was the plan with each search warrant, was to

4   download cell phones.

5   Q.      To your knowledge, is the phone number for

6   any codefendant in this case on Mr. Johnson's cell

7   phone?

8   A.      I couldn't say.

9   Q.      What evidence, if any, connects Mr. Johnson

10  to Dwayne Appling, one of the codefendants?

11  A.      The -- Another co-conspirator within the

12  organization.  Based on that person, a controlled

13  purchase was made with Mr. Johnson.

14  Q.      Okay.  Well, what connection to Mr. Appling

15  is that?

16  A.      It's an entire organization.  All these

17  folks are intertwined as users, suppliers.  It's very

18  entangled.

19  Q.      Well, if I understood you correctly on

20  direct, what you said was some of the users who are

21  cooperating had indicated that when they couldn't

22  find heroin with one of their normal suppliers,

23  whether that was Mr. Scott, Mr. Mitchell, whoever,

24  Mr. Johnson was the potential alternate source that

25  they could go to; correct?

```
 1    A.         Correct.

 2    Q.         That's basically how you got to Mr. Johnson?

 3    A.         Correct.

 4    Q.         What I'm asking is, what connection, if any,

 5    is there directly between Mr. Appling and

 6    Mr. Johnson?  Have they ever talked to each other?

 7    Do they know each other?  Is there any evidence of

 8    that that you've uncovered?

 9    A.         I can't say if they know each other.  I

10    don't have any evidence that they've talked to each

11    other.

12    Q.         Okay.  Any evidence with respect to

13    Mr. Scott, that Mr. Johnson knows Mr. Scott or has

14    ever talked to Mr. Scott?

15    A.         I can't say.

16    Q.         What about Mr. Mitchell?

17    A.         Yes.

18    Q.         Okay.  And how do Mr. Johnson and

19    Mr. Mitchell know each other?

20    A.         Through the subject that I guess unwittingly

21    coordinated the controlled purchase from Mr. Johnson.

22    Q.         Okay.  Who was that?  Are you able to say?

23               MR. CHATHAM:  Objection, Your Honor.

24    Relevance.

25               THE COURT:  Sustained.
```

1    BY MR. WASSMER:

2    Q.        Okay.  And how did this individual

3    coordinate the purchase through Mr. Johnson?

4    A.        By taking an informant over to that

5    location, making the purchase.

6    Q.        Okay.  Mr. Mitchell took someone over to

7    make a purchase with Mr. Johnson?  Is that what

8    you're saying, or --

9    A.        A third party did.

10   Q.        A third party.  That knows both Mr. Mitchell

11   and Mr. Johnson?

12   A.        That, I do know.  Yes.

13   Q.        Okay.  Is there any information that you

14   have that Mr. Mitchell and Mr. Johnson have ever

15   bought and sold -- or sold heroin to each other?

16   A.        Through interviews, we've learned that is

17   true.

18   Q.        Okay.  Through interviews of whom?

19   A.        Informants.

20   Q.        Okay.  What about Ms. Moore?  Any connection

21   between Ms. Moore and Mr. Johnson?

22   A.        That, I don't know.

23   Q.        What about Ms. Hayes?

24   A.        I don't know that, either.

25   Q.        Mr. Edwards?

 1   A.        Yeah.  I don't know that.  I don't believe

 2   so with that.

 3   Q.        And Mr. Sapp?  Any connection with Mr. Sapp,

 4   that you know of?

 5   A.        I can assume, because he and Rochester are

 6   partners.  However, I can't say as though that would

 7   be true.

 8   Q.        Okay.  With regard to the January 12th, 2011

 9   controlled buy, was that controlled buy recorded in

10   any way?

11   A.        Yes.

12   Q.        Audio or video or both?

13   A.        Audio.

14   Q.        Any photographs?

15   A.        No.

16   Q.        And I think you said there were ten foils of

17   approximately .2 grams purchased?

18   A.        Correct.

19   Q.        And is that a typical amount that a user

20   purchases?

21   A.        No.

22   Q.        Okay.  What's the typical amount that a user

23   purchases?

24   A.        One to two bags or foils.

25   Q.        Do users ever purchase more than that if

1    they're stocking up?

2    A.        Rarely.

3    Q.        When are you contending that Mr. Johnson

4    joined the conspiracy charge in Count 1?

5    A.        Approximately the beginning of 2011.

6    Q.        Let's turn to the February 15th, 2011 search

7    warrant.  I think you said there were seven foils

8    seized?

9    A.        Correct.

10   Q.        And were those all approximately .2 grams

11   each?

12   A.        I believe so.

13   Q.        And Mr. Johnson told the officers that that

14   was for his personal use; correct?

15   A.        I don't recall that.

16   Q.        Okay.  Who interviewed Mr. Johnson?

17   A.        Agent Dusty Worley.

18   Q.        Okay.  Where was the gun found?

19   A.        I believe in a Tupperware container.

20   Q.        And where in the house?

21   A.        If memory serves me correctly, it was in the

22   basement.

23   Q.        And were you aware that the brother of

24   Mr. Johnson's girlfriends [sic] lived -- girlfriend

25   lives in that basement?

```
1   A.        I was not.

2   Q.        Do you know that Mr. Johnson did not live at

3   that house?

4   A.        I don't know if that's true.

5   Q.        Okay.  Was the gun registered to anyone?

6   A.        No.

7   Q.        Were any fingerprints of Mr. Johnson found

8   on the gun?

9   A.        I'm not aware of any that were located.

10  Q.        And you indicated that Agent Worley had

11  interviewed Mr. Johnson; correct?

12  A.        Yes.

13  Q.        Was that interview recorded?

14  A.        No.

15  Q.        Do you know if Agent Worley told Mr. Johnson

16  on February 15th that he was the subject of a Federal

17  investigation?

18  A.        I couldn't say.

19  Q.        Do you know if Mr. Worley told Mr. Johnson

20  that Mr. Johnson could be going to prison for a long

21  time?

22  A.        Honestly, I couldn't say.

23  Q.        And Mr. Johnson was released after that.  He

24  was not arrested on February 15th; correct?

25  A.        Correct.
```

1    Q.      And he did not flee; correct?

2    A.      I -- We located him at the time -- He

3  actually turned himself in at the time of the arrest.

4  Between then and the search warrants, we didn't have

5  contact with Mr. Johnson.

6    Q.      Okay.  Well, the arrest warrant was issued

7  on April 19th after the indictment; correct?

8    A.      Correct.

9    Q.      And you or somebody else called up

10  Mr. Johnson and told him that an arrest warrant had

11  been issued; correct?

12    A.      I believe they spoke to his mother, who

13  contacted him.

14    Q.      Okay.  And then Mr. Johnson turned himself

15  in promptly; correct?

16    A.      That's my understanding, yes.

17          MR. WASSMER:  Okay.  Nothing further, Your

18  Honor.

19          THE COURT:  Mr. Chatham?

20          MR. CHATHAM:  Nothing further.

21          THE COURT:  Anything else, Ms. Kelly?

22          MS. KELLY:  No.

23          THE COURT:  Mr. O'Brien -- Or excuse me.

24  Mr. Clements?

25          MR. CLEMENTS:  No, Your Honor.

1           THE COURT:  Mr. O'Brien?

2           MR. O'BRIEN:  No, Your Honor.

3           THE COURT:  You may step down.

4           Any additional evidence, Mr. Chatham?

5           MR. CHATHAM:  No, Your Honor.

6           THE COURT:  Ms. Kelly, do you have any

7    evidence you would like to offer?

8           MS. KELLY:  We have no evidence.  Just

9    argument.

10          THE COURT:  Mr. Clements, do you have any

11   evidence you'd like to offer?

12          MR. CLEMENTS:  Just proffer the Pretrial

13   Services Report.

14          THE COURT:  Mr. O'Brien, do you have any

15   evidence you'd like to offer?

16          MR. O'BRIEN:  No, Your Honor.

17          THE COURT:  Mr. Wassmer, do you have any

18   evidence you'd like to offer?

19          MR. WASSMER:  No, Your Honor.

20          THE COURT:  All right.  Then I'll hear

21   arguments on this issue.  I think what I'd like to do

22   is go through each defendant one by one.

23          Mr. Chatham, if you'll address the detention

24   of Mr. Scott first.  And then Ms. Kelly will have an

25   opportunity to respond.  And then I'll go through

```
1    that while it's still relatively fresh in my mind.

2              MR. CHATHAM:  Thank you, Your Honor.

3              The United States would rely on the

4    information contained in the Pretrial Services Report

5    as well as the testimony today of Agent Furman.  This

6    is a case -- In all instances, this is a case where

7    there is a rebuttable presumption in favor of

8    detention under 3142(e).

9              Here the factors, the 3142(g) factors, the

10   nature and circumstances of this offense are that

11   it's a controlled substance offense.  And the weight

12   of the evidence here is -- the United States would

13   say is strong.

14             There are hundreds of calls and text

15   messages intercepted by Mr. Scott relating to drug

16   trafficking.  There -- There's an interview -- a

17   search warrant at his place where drug packaging

18   materials were found and an interview where Mr. Scott

19   admitted to selling six grams -- or receiving six

20   grams every other day, that is, of heroin, between

21   November and -- November 2010 and February 2011.

22             And, also, as the defendant has admitted to

23   the pretrial services officer, Defendant is a heroin

24   addict.  Although, he claims that he's been illegally

25   obtaining methadone and has apparently attempted to
```

 1    kick his habit here in the last few weeks.

 2         As to the defendant's -- the history and

 3    characteristics of Mr. Scott, we'll note that the

 4    defendant is unemployed, and apparently has been

 5    unemployed since 2008, since the end of 2008.

 6         Looking through the defendant's criminal

 7    history, there's -- it's a lengthy criminal history

 8    dating back to roughly 1985 as far as arrests go.  In

 9    1989, there's an unlawful use of a firearm.  In '92,

10    he was -- has a felony conviction for possession of a

11    controlled substance with intent to deliver for which

12    he received a three-year prison sentence in Illinois.

13         Another conviction for -- a felony drug

14    conviction, it appears, from 1993.  Another

15    apparently felony conviction in Illinois in 1995 for

16    retail theft.  And then the most recent conviction

17    being in 2002, a felony drug conviction in Black Hawk

18    County for possession with intent to distribute

19    crack, where the defendant received a 10-year

20    suspended sentence.

21         Based on all this information, the United

22    States asserts that the defendant is both a flight

23    risk and a danger to the community.  And the United

24    States asks that he be detained.

25         THE COURT:  Ms. Kelly.

1          MS. KELLY:  Thank you.

2          We believe in the first instance that

3    Mr. Scott is not a flight risk.  I believe that the

4    probation office has reached a similar conclusion in

5    the Pretrial Services Report.

6          We note that Arthur Scott has lived in

7    Waterloo for the last 12 years and at the same

8    residence for the last seven.  He's been with his

9    wife for about ten years.  And they're raising two

10   children, ages nine and five, in Waterloo.  And that

11   he does have a stable home that he can return to.

12         And we note that even his mother lives in

13   Waterloo as well.  So he does have family ties to the

14   community.  And we believe that those ties are

15   strong.  The prosecutor has noted that Mr. Scott is

16   not currently employed.

17         But we note that, as stated in the Pretrial

18   Services Report, he was steadily employed from the

19   year 2000 until December 2008, working at a tannery

20   in Waterloo.  The only reason he lost that job was

21   because that company moved that business to Mexico

22   out of Waterloo.

23         He's tried to support himself and his family

24   through odd jobs since then.  And certainly, if he

25   were to be released, he would be trying to get

1    something a bit more stable, as he's been trying to
2    do over the past several weeks.

3           His wife does work.  She works at a Holiday
4    Inn Express.  So the family does have income at this
5    time.  So they are able to support themselves.  We
6    also note that, as the agent's testified, Mr. Scott
7    did make arrangements to turn himself in or at least
8    make himself available for the officers to come and
9    get him when there was an arrest warrant here.

10          We have no indication whatsoever that once
11   Arthur Scott knew he was under investigation he made
12   any efforts whatsoever to leave the area.  We also
13   believe there's not sufficient evidence to show that
14   he's a danger to the community.

15          According to the Pretrial Services Report
16   and the testimony here today, it does appear that
17   Arthur Scott has had a problem with heroin use.  But
18   we also note that over the last month or so he seems
19   to have taken some significant steps to stop using
20   heroin.

21          And we note that his wife has confirmed this
22   as well, that he seems to have been clean at least
23   for a little while now, she said.  The government
24   also focuses on Mr. Scott's criminal history.

25          But we note that the more serious drug

1    charges that they refer to and that are identified in

2    the bond report occurred in Cook County in 1992 and

3    1993 when Mr. Scott was about 24 or 25 years old.

4         He did receive a concurrent sentence for

5    those offenses.  And, really, the next drug

6    trafficking offense would be the Waterloo case from

7    2002.  Now, the State court in Waterloo saw fit to

8    give him a suspended sentence on that case.

9         He received five years of probation.  And

10   all indications are that he discharged that term of

11   probation successfully.  So we do have some evidence

12   of recent compliance on terms and conditions that a

13   Court has imposed on Mr. Scott.

14        Now, the Pretrial Services Report also

15   refers to some concern about violent behavior in

16   Mr. Scott's history.  I would respectfully disagree

17   with that.

18        While we do have one firearm case from 1989,

19   and he was arrested on one instance -- I'm sorry --

20   two instances for domestic battery, those seem to

21   have been dismissed or stricken from leave.

22        I also note that in the testimony here today

23   from the agent, in describing this overall conspiracy

24   and the alleged roles that each person purportedly

25   plays in it, we heard no testimony that Mr. Scott

         1    carried a firearm, had a firearm, or spoke of
         2    violence at all during any of these alleged wiretap
         3    conversations.
         4         So I don't think we have the evidence that
         5    Mr. Scott is a violent or aggressive person.  And I
         6    don't think that that should be a concern for this
         7    Court.
         8         The government also focuses heavily on the
         9    evidence that they've gathered in this case, the
        10    scope of this purported conspiracy.  As the Court,
        11    I'm sure, is aware, the defense is a couple of steps
        12    behind here because we don't have yet access to all
        13    of this information.
        14         But when we look at what the agent has
        15    testified to here today, what I heard was in addition
        16    to the description of what the government believes
        17    was Mr. Scott's involvement, I also heard that
        18    Mr. Scott was very cooperative with law enforcement
        19    in making arrangements to meet with them.
        20         Again, as I stated, he made arrangements to
        21    turn himself in.  And he spoke with these officers
        22    willingly and without counsel.
        23         In sum, Your Honor, we believe that there is
        24    a set of conditions that this Court could impose on
        25    Mr. Scott.  He understands that those terms and

1   conditions would be very restrictive under the
2   circumstances.
3           This is a serious set of charges that these
4   individuals are facing.  And Mr. Scott understands
5   the severity of those charges.  But we respectfully
6   ask the Court to consider releasing Mr. Scott on
7   terms and conditions pending resolution of this
8   matter.
9           THE COURT:  In determining whether a
10  defendant should be released pending a trial, the
11  Court is governed by Title 18 United States Code
12  Section 3142(e).
13          The pretrial detention of a defendant
14  requires a finding by the Court that no condition or
15  combination of conditions will reasonably assure his
16  appearance as required and the safety of the
17  community.
18          The government has the burden of proof in
19  this regard.  It is aided in this case by a
20  rebuttable presumption that's found in section
21  3142(e).
22          And that is, if there is probable cause to
23  believe that the defendant has committed a serious
24  drug offense, then there's a rebuttable presumption
25  that he should be detained pending the trial.

 1           In this case, the grand jury found probable
 2   cause to charge the defendant with conspiracy to
 3   distribute heroin and, I believe, one count of
 4   distribution of heroin near a school.
 5           In addition, the testimony of Task Force
 6   Officer Furman establishes probable cause.  So there
 7   is a rebuttable presumption that's triggered in this
 8   case that the defendant should be detained.
 9           The defendant then has a burden of
10   production regarding evidence as to why he should not
11   be detained.  However, the burden of persuasion
12   remains on the government.  In determining whether or
13   not the government has met that burden, the Court
14   considers the factors set forth in Section 3142(g).
15           They include the nature and circumstances of
16   the offense charged, including whether the offense is
17   a crime of violence or involves narcotic drug or
18   minor victim or firearm.
19           In this case, the defendant is charged in
20   two counts, both counts relating to a narcotic drug.
21   The Court's required to consider the weight of the
22   evidence.
23           Obviously, this is not the trial.  And
24   accordingly, the testimony regarding the facts is
25   necessarily very limited.  And so it's difficult for

1    the Court to determine the weight of the evidence.

2         However, according to Officer Furman, the

3    defendant's phone was wiretapped and there are calls

4    which were intercepted which support the allegations

5    here.  The defendant -- defendant's property was

6    searched and packaging material and drug

7    paraphernalia were found.

8         The defendant was interviewed and apparently

9    admitted to the distribution of heroin.  In addition,

10   there was a controlled purchase made from the

11   defendant on January 4, 2011.  So the --

12        Obviously, I'm not making any judgment about

13   the defendant's guilt or innocence, but the -- it

14   would appear that the weight of the evidence is

15   fairly strong.

16        The Court's also required to consider the

17   defendant's history and characteristics, including

18   his character, physical and mental condition, family

19   ties, employment, financial resources, and ties to

20   the community.

21        This information is found in the Pretrial

22   Services Report.  The defendant is 42 years old.  He

23   was born and raised in Chicago.  Lived in Elkhart,

24   Indiana for one year and Cleveland, Ohio for three

25   years before moving to Waterloo in 1999.

1          Prior to his arrest, he was living with his
2    wife and two children.  He has extended family --
3    Well, his mother lives in Waterloo.  And he has
4    extended family.  His father and his brothers and
5    sisters apparently live in the Chicago area.
6          The defendant has been unemployed since
7    December of 2008, although he indicates that he's
8    done odd jobs since that time.  The defendant is in
9    good health and has no history of mental or emotional
10   health concerns.
11         The Court's also required to consider the
12   defendant's past conduct, including history relating
13   to drug or alcohol abuse, criminal history, and
14   record concerning appearances at court proceedings.
15         The defendant admits that he is a user of
16   heroin.  According to the Pretrial Services Report,
17   he first used back in the early 1990s, but did not
18   use between 2000 and 2009.  However, from 2009 until
19   about a month ago, he was a daily user of heroin.
20         Now, the defendant told the pretrial
21   services officer that he's been taking methadone and
22   Suboxone, which are apparently prescription
23   medications used to treat opiate addiction, although
24   he does not have a prescription for those and has
25   been getting them off the street.

1          The defendant has a criminal record dating

2     back to age 18.  He was arrested twice in 1987.

3     Those were stricken from the docket with leave to

4     reinstate, which apparently is a common practice in

5     Cook County, Illinois.

6          In 1988, he was arrested twice more.  Those

7     were also stricken or not prosecuted.  In 1989, he

8     was arrested twice more.  This time the unlawful use

9     of a firearm apparently was prosecuted and the

10    defendant received one year of supervision.

11         In 1999, he was arrested for possession of a

12    controlled substance.  That appears to be the fifth

13    time that he was arrested for possession of a

14    controlled substance, if you count when he was 17.

15         It indicates that bond was forfeited in that

16    case.  That arrest occurred while the defendant was

17    under supervision for the unlawful use of a firearm.

18    He apparently was not arrested in 1991.

19         In 1992, he was arrested twice more for

20    solicitation of narcotics.  And that was not

21    prosecuted.  However, he was prosecuted for

22    possession of a controlled substance with intent to

23    deliver.

24         While that charge was pending, the defendant

25    was arrested in 1993 with possession of a controlled

1   substance with intent to deliver on school grounds or

2   public parkway and a second count of possession of a

3   controlled substance with intent to deliver.

4           On November 22, 1993, the defendant was then

5   sentenced on all three of those counts.  Three years

6   in prison on the first one.  It appears four years in

7   prison on the second two.  So after being sentenced

8   to those three years and four years, Defendant went

9   to prison.

10          He was paroled after about six months, in

11  May of 1994.  In March of 1995, while he was on

12  parole, the defendant was charged with possession of

13  cocaine.  In July of 1995, while he was on parole, he

14  was charged with retail theft.

15          In October of 1995, while he was on parole,

16  he was charged with another retail theft.  And then

17  in November of 1995, November -- yeah, November of

18  1995, he was sent to prison on the latest charge of

19  retail theft and his parole was revoked on the prior

20  three drug -- felony drug convictions.

21          He was paroled again after about six months,

22  in March of 1996.  In September of 1996, while he was

23  on parole, he was arrested and charged with domestic

24  battery, although that was stricken from the

25  record -- or stricken from the docket with leave to

1    reinstate.

2          In October of 1996, while he was on parole,

3    he was charged with disorderly conduct, although

4    disposition of that is unknown.  The defendant was

5    apparently discharged from parole in March of 1997.

6          In January of 1998, the defendant was

7    charged with domestic battery in Cook County.  That

8    was stricken from the record -- or stricken from the

9    docket with leave to reinstate.

10          And then in June of 2002, he was charged in

11    Black Hawk County with possession with intent to

12    distribute crack cocaine and he received a 10-year

13    suspended prison sentence.

14          So by my count, the defendant has four prior

15    felony drug convictions and has an additional prison

16    term on a theft charge.  There's no indication the

17    defendant ever failed to appear for any court

18    proceeding.

19          The Court's also required to consider

20    whether, at the time of the current offense or

21    arrest, the defendant was on probation, parole, or

22    other pretrial release.  The defendant was on

23    probation until August of 2004.

24          It does not appear that he was on any sort

25    of pretrial release or probation at the time of the

1   events which give rise to these charges.

2           And, finally, the Court's required to

3   consider the nature and seriousness of the danger to

4   any person or the community that would be posed by

5   the defendant's release.  In this case, the defendant

6   does have a prior conviction for the unlawful use of

7   a firearm, although that was some time ago.

8           In addition, as Officer Furman testified,

9   the distribution of heroin generally poses a risk to

10  the community.  In this case, the Court is

11  particularly concerned about the fact the defendant

12  has four prior felony drug convictions and there is

13  substantial evidence to indicate that he was

14  distributing heroin recently.

15          The Court's also concerned about the fact

16  that the defendant admits that he has continued to

17  use heroin up until about a month prior to his

18  arrest.  I think it's significant in this case,

19  because there were search warrants executed on

20  February 15, 2011.

21          And by that time, at least, the defendant

22  knew, presumably, that he was a target of a Federal

23  investigation or at least a State investigation.  And

24  notwithstanding that fact, he continued to use heroin

25  up until about a month ago.

1          The Court believes that based on all these
2     facts and circumstances, including the rebuttable
3     presumption that applies in this case, that the
4     government has met its burden of proof and the
5     defendant should be detained.
6          Now, Mr. Scott, you do have the right to
7     appeal my decision.  And that right to appeal is
8     commenced by filing a motion for a review by Chief
9     Judge Linda Reade.  And Ms. Kelly can assist you in
10    doing that.
11         MS. KELLY:  Your Honor, if I could have just
12    a moment.  My client has indicated that he very badly
13    needs to use the restroom.  And since his matter is
14    resolved, I didn't know if it would be all right if
15    perhaps the marshals could escort him at this time?
16         THE COURT:  Yeah.  You can be excused.
17         MS. KELLY:  Thank you, Your Honor.
18         THE COURT:  All right.  At this time I'd
19    like to talk about Rochester Mitchell.  Mr. Chatham.
20         MR. CHATHAM:  Thank you, Your Honor.
21         Again, without going through all the general
22    issues again, it's a rebuttable presumption case.  It
23    involves a controlled substance.  Here, the testimony
24    today has shown that the Defendant Mitchell was
25    intercepted on wiretaps having drug-related

1    conversations.

2            There was -- There were three controlled

3    transactions with Mr. Mitchell and a fourth incident

4    in which he was arrested after stepping off a bus

5    from Chicago with seven grams of heroin in his

6    possession.  The search of the defendant's house,

7    where there was methadone and heroin found.

8            Based on all that, the weight of the

9    evidence against Mr. Mitchell is strong.  Here, as to

10   the history and characteristics of Mr. Mitchell,

11   again, the United States would note that the

12   Defendant Mitchell is also unemployed and apparently

13   has been so since 2010.

14           Mr. Mitchell also has a substantial history

15   of arrests and convictions, including apparent felony

16   convictions for possession of a controlled substance

17   in 1991 in Cook County, Illinois, sale or delivery of

18   a controlled substance in 1992 in Cook County,

19   Illinois, possession of heroin, less than 15 grams,

20   in 19 -- arrest in 1995 and a conviction in '96.

21           Another apparently misdemeanor conviction

22   for possession of a controlled substance, cocaine.

23   Conviction occurring in 2000 from a 1998 arrest.  A

24   2002 conviction for manufacture or delivery of a

25   controlled substance, that being heroin, from Cook

1    County, Illinois.

2            And apparently a misdemeanor arrest from

3    2003 that -- a conviction for attempted possession of

4    heroin, less than 15 grams, also in Cook County.  And

5    then the most recent felony conviction from 2004 on

6    possession of cocaine, less than 15 grams, where the

7    defendant received 18 months prison and had a parole

8    revocation in 2005.

9            And as noted by the probation officer in the

10   Pretrial Services Report, a number of those

11   arrests -- the defendant's arrests and convictions

12   occurred while other cases remained pending and when

13   he was under Court supervision.

14           Based on the information in the Pretrial

15   Services Report and the testimony of Agent Furman,

16   the United States believes that there is no condition

17   or combination of conditions that would reasonably

18   assure Mr. Mitchell's appearance and the safety of

19   the community.  And we would ask that he be detained.

20           THE COURT:  Mr. Clements.

21           MR. CLEMENTS:  Thank you, Your Honor.

22           Although my client does have a criminal

23   history, we would point out that for the past six

24   years he's had no significant involvement with the

25   criminal justice system.  And also, over that period,

1    a period of eight years, he's lived in the Waterloo

2    community.

3           He has had steady employment, a

4    seven-year-long employment with Tyson.  He's worked

5    until last year, in which -- and then he was laid

6    off.  He's collecting unemployment now.  So he has a

7    history of being employed.

8           He lives in Waterloo with his girlfriend and

9    his 15-year-old son.  We believe that he is not a

10   risk of flight nor a danger to the community.

11          THE COURT:  The legal standard which the

12   Court applies I've already reviewed.  And I won't go

13   through again.  I would indicate that the defendant

14   is charged in five counts.

15          In addition to the conspiracy charge in

16   Count 1, he's charged with three counts of

17   distribution near a school and one count of

18   possession with intent to distribute.  All of these

19   carry the rebuttable presumption found in Section

20   3142(e), that the defendant should be detained

21   pending the trial in this case.

22          The factors which the Court must consider

23   are the nature and circumstances of the offense

24   charged.  Here again, the defendant's charged with

25   five drug-related offenses.

1       The court's required to consider the weight
2   of the evidence.  According to Officer Furman, the
3   defendant was intercepted on phone calls in which
4   drug dealing was discussed.

5       Obviously, for purposes of this hearing, I
6   haven't heard those calls.  I don't know precisely
7   what they say or how implicating they may be.
8   However, the search of Defendant's residence, as I
9   understand it, revealed ten foils of heroin, along
10  with packaging material.

11      Also, if I understood the testimony
12  correctly, 31 foils of heroin were found in his
13  pocket.  There was cutting agent found, Dormin, along
14  with methadone.  And I hope I'm not confusing
15  Mr. Mitchell with Mr. Sapp.

16      There were also three controlled buys on
17  January 7, January 10, and January 27.  And again,
18  without hearing the precise details of the controlled
19  buys, Officer Furman testified generally as to the
20  procedures that are followed.

21      And generally, a controlled buy is pretty
22  good evidence of distribution of drugs because of the
23  procedures that law enforcement uses.  So the weight
24  of the evidence against the defendant would appear to
25  be strong.

1          With respect to the history and

2     characteristics of the defendant, the Court has the

3     Pretrial Services Report regarding Mr. Mitchell.  He

4     is 46 years old, was born in Mississippi, and lived

5     there until he was 15, when he moved to Chicago with

6     his family.

7          He then moved to Waterloo about eight years

8     ago, and was living with his girlfriend prior to his

9     arrest.  He is single and has never been married,

10    although he does have four children.  The defendant

11    is unemployed, although he apparently did have steady

12    employment until sometime in 2010.

13         He's in good health.  He has no history of

14    mental or emotional health concerns.  The defendant

15    admits to being a daily user of heroin for the past

16    four years, although indicated to the pretrial

17    services officer that he stopped about two months

18    ago.

19         The defendant has a lengthy prior criminal

20    record dating back to age 26.  He was actually

21    arrested at age 23 for battery, but disposition of

22    that charge was unknown to the pretrial services

23    officer.

24         At age 26, in 1991, the defendant was

25    charged with possession of a controlled substance and

1   was sent to prison in Illinois for three years.

2   While that charge was pending, the defendant was

3   arrested again for sale or delivery of a controlled

4   substance.

5           And then, in October of 1992, he was

6   sentenced on both of those drug charges to a two-year

7   prison term.  He was paroled in May of 1993, after

8   about seven months.

9           While the defendant was on parole, he was

10  charged with solicitation of narcotics.  However,

11  that charge was stricken from the docket with leave

12  to reinstate.  Also, while he was on patrol, he was

13  charged with possession of heroin.

14          He was -- Or while that new charge was

15  pending, the defendant was arrested again for

16  possession of a controlled substance.  In February of

17  1996, he was then given a one-year prison term on the

18  new possession of heroin charge.  And the second

19  charge of possession of a controlled substance was

20  not prosecuted.

21          The defendant was paroled in April of 1996,

22  after about two months.  About four months later, he

23  was charged with disorderly conduct, which was

24  stricken from the record -- or stricken from the

25  docket with leave to reinstate.

1          Four months later he was charged with

2     possession of a controlled substance, although that

3     was dismissed because there was no probable cause.

4     In 1998, the defendant was charged with possession of

5     cocaine.

6          While that charge was pending, the defendant

7     was charged with possession of heroin.  And while

8     both of those charges were pending, the defendant was

9     charged with soliciting an unlawful business.  He

10    then received a 60-day home confinement on the first

11    charge, the possession of cocaine.

12         The possession of heroin charge was not

13    prosecuted.  And the disposition of the soliciting an

14    unlawful business charge is unknown.

15         In October of 2000, which, by my

16    calculation, would have been just like six days after

17    he finished his 60-days home confinement, the

18    defendant was charged with possession of PCP.

19    However, that charge was not prosecuted.

20         A few months later, he was charged with

21    manufacture and delivery of a controlled substance,

22    specifically heroin.  While that charge was pending,

23    the defendant was charged with possession of cocaine.

24         And while both of those charges were

25    pending, the defendant was charged again with

1    possession of cocaine.  Then, in November of 2002, he

2    received a 5-year -- five years of probation on the

3    manufacture or delivery of heroin charge.  The

4    possession of cocaine charges were not prosecuted.

5         In May of 2003, while he was on probation

6    for manufacture or delivery of heroin, the defendant

7    was charged with manufacture or delivery of cocaine.

8    A few months later, while still on probation for the

9    heroin charge, the defendant was charged with

10   attempted possession of heroin and received a 30-day

11   jail sentence.

12        And then in January of 2004, while on

13   probation on the heroin charge, the defendant was

14   charged with possession of cocaine.  He received an

15   18-month prison term.  He was paroled after two

16   months.

17        And then later, in May of 2005, his parole

18   was revoked, although it does not indicate the reason

19   for that.  And then he was discharged just about six

20   weeks later.

21        I don't know if all of these drug charges

22   were felonies, but at least -- it looks like at least

23   two of them are prior felony drug convictions.  And

24   it could be anywhere from three to five of them.

25        There's no indication the defendant's ever

 1    failed to appear for a court proceeding.  It does not

 2    appear that the defendant was on probation or parole

 3    at the time of the events which give rise to this

 4    charge.

 5          And finally, the Court's required to

 6    consider the nature and seriousness of the danger to

 7    any person or the community that would be posed by

 8    the defendant's release.

 9          In this case, the Court is particularly

10    struck by the fact that the defendant has repeatedly

11    failed to comply with the terms of either pretrial

12    release or probation or parole.  In many cases, he's

13    committed additional crimes while on either pretrial

14    release or probation or parole, some of which were

15    felonies.

16          The Court does not have any confidence that

17    the defendant would comply with any terms and

18    conditions which I may impose.  Based on that and the

19    rebuttable presumption that exists, the Court finds

20    that the defendant -- or strike that -- the

21    government has met its burden of proof and the

22    defendant will be detained pending the trial.

23          Now, Mr. Mitchell, you do have the right to

24    appeal my decision.  That right to appeal's commenced

25    by filing a motion for review by Chief Judge Linda

1 Reade.  And Mr. Clements can assist you in doing

2 that.

3          All right.  Let's talk about Mr. Sapp.

4 Mr. Chatham.

5          MR. CHATHAM:  Thank you, Your Honor.

6          Again, this is a rebuttable presumption case

7 involving controlled substances.  The testimony today

8 has shown that the Defendant Sapp was intercepted

9 again on the Title III.

10          There were three controlled transactions

11 with Mr. Sapp and Mr. Mitchell, and then a search of

12 Mr. Sapp's residence, where the agents recovered ten

13 foils of heroin, packaging material, et cetera.  And

14 then, also, Mr. Sapp, I believe, was present with

15 Mr. Mitchell getting off that bus with the seven

16 grams of heroin.

17          Looking to the information in the Pretrial

18 Services Report, Mr. Sapp is currently unemployed,

19 and apparently has been so since October of 2010.  He

20 reports to the probation officer that he was a daily

21 user of heroin for the past five to six years and

22 used the day before he was arrested for this offense.

23          Defendant Sapp has a criminal history dating

24 back to 1982, when he received a 45 days jail on a

25 shoplifting charge.  And then beginning in '83 -- or

1    in '83, he had a robbery charge, ten years prison

2    received in New Jersey.  A felony distribution of

3    heroin and cocaine charge from New Jersey in 1993,

4    where he received three years prison.

5         In 1997, Mr. Sapp was convicted of

6    possession of controlled substance, marijuana, where

7    he had at least two failures to appear.  It appears

8    that he had two failures to appear, and then

9    eventually received five days jail that was suspended

10   and a year of probation.

11        In 2000, Defendant Sapp was convicted of

12   domestic abuse assault, without him causing injury,

13   and assault.  And then, again, in 2001 -- or in 2001,

14   he was convicted of operating a motor vehicle while

15   intoxicated.  And that appears to have occurred while

16   he was on probation in the domestic abuse assault

17   case.

18        In 2002, Mr. Sapp was arrested for another

19   OWI and, in 2003, was convicted of that.  2006, he

20   was arrested for driving while barred as a habitual

21   offender and, in 2007, received 180 days jail.  175

22   of those days were suspended.

23        And then his most recent conviction occurred

24   in 2009 for a possession of a controlled substance,

25   marijuana, as a second offense.  And that conviction

1    occurred in June of 2009.

2         Based on the information contained in the

3    Pretrial Services Report and Agent Furman's testimony

4    today, the United States asserts there is no

5    condition or combination of conditions that would

6    reasonably assure the appearance of Mr. Sapp and the

7    safety of the community and would ask that Defendant

8    Sapp be detained.

9         THE COURT:  Mr. O'Brien.

10        MR. O'BRIEN:  Thank you, Your Honor.

11        I do not think that Mr. Sapp is a flight

12   risk.  He has community ties in Waterloo, because

13   that's where he's lived for the last 15 years.  This

14   isn't a case where he's been moving around during the

15   last 15 years, but he's had steady residence in

16   Waterloo during that time.

17        He worked for 15 years for Tyson's Foods.

18   So he's had steady employment.  Although that ended

19   in October of 2010, he's receiving unemployment and

20   was looking for work.  He'd continue to look for and

21   obtain work if released.

22        And his community ties are that of his

23   significant contacts in the area, although not family

24   in the area, a lot of friends and acquaintances, and

25   his whole connection with the community of Waterloo.

1      The nature of the offense charged, while is

2   serious, he's a limited player in this, in that he's

3   a user.  He's at the user end of it.  His criminal

4   history, while it dates back to 1982, the only

5   violent type of offense that he's had since '82 was

6   the assault without intent to cause injury.  The

7   other types are more the misdemeanor.

8      He had the drug in '93, but he's had

9   misdemeanor types in other cases since coming to

10   Iowa:  the OWIs, possession of marijuana, and driving

11   while barred.  Other than that first early case in

12   Iowa, where he failed to show up for arraignment --

13   which seems to be an anomaly here, because in the

14   future court dates he appears -- he's had no trouble

15   making his court dates and he successfully discharged

16   probation.

17      The one thing that I noted in reviewing the

18   pretrial report is he's had no substance abuse

19   treatment.  He's known about this criminal offense

20   hanging over his head since at least the search

21   warrant in February, and he hasn't taken flight.

22      In meeting the bus, there's nothing that's

23   been presented, that I heard today, where my client

24   had anything on his person.  He was simply picking up

25   another individual from the bus.  And Mr. Sapp, I do

 1    think there are conditions upon which he could be

 2    released into the community without being a danger to

 3    the community and that he would show for court.  He

 4    did turn himself in on this offense.  Thank you.

 5         THE COURT:  Again, the legal standards which

 6    must be applied are set forth in Section 3142(e), the

 7    factors which the Court must consider are set forth

 8    in Section 3142(g).

 9         In this case, Mr. Sapp has been charged in

10    three counts.  Obviously, I'm only hearing a small

11    portion of the evidence here today, but it does

12    appear that the evidence against Mr. Sapp -- there

13    hasn't been as much evidence produced against

14    Mr. Sapp as the other defendants.

15         Officer Furman described Mitchell and Sapp

16    as partners, but indicated that Mitchell was the

17    leader.  There's testimony that Sapp went to pick

18    Mitchell up at the bus station, but there's no real

19    indication of Sapp's involvement.

20         Sapp's also charged with making a house

21    available.  Which, again, that would appear to be

22    part of the testimony about Mitchell and Sapp

23    allegedly selling heroin from Sapp's residence.  A

24    search of the residence did reveal ten foils of

25    heroin.

1          The defendant did not make any incriminating

2     statements, as I understand it, so it's difficult for

3     the Court to determine weight of the evidence.  But

4     at this point, there's not -- there's no substantial

5     evidence, I guess, or overwhelming evidence that was

6     presented at the hearing today.

7          The Court is also required to consider the

8     history and characteristics of the defendant.  Again,

9     those are found in the Pretrial Services Report.  The

10    defendant is 47 years old.  He was born and raised in

11    Newark, New Jersey.  He moved to Waterloo about

12    15 years ago.

13         He, prior to his arrest, was living alone in

14    Waterloo.  He has never been married and has no

15    children.  He is currently unemployed.  He told the

16    pretrial services officer that he was fired from his

17    employment in October of last year because of

18    attendance problems.

19         The defendant's in good health and has no

20    history of mental or emotional concerns.  Defendant

21    admits to being a daily user of heroin for the past

22    five or six years and admits that he used it right up

23    until the day prior to his arrest.

24         The defendant has a criminal history dating

25    back to 1982, when he was 19 years old.  He had a

1    conviction for shoplifting in 1982 and was also

2    charged in 1982 for marijuana possession and another

3    unspecified drug, although the disposition of those

4    charges are unknown.

5         The next year, in 1983, the defendant was

6    charged and convicted of robbery and carrying a

7    prohibited weapon and was sent -- or given a 10-year

8    prison term, although the date that he was

9    sentenced -- or the date that he was discharged is

10   unknown.

11        In 1989, the defendant was charged with

12   possession of marijuana.  That was dismissed.  In

13   1990, he was charged again with possession of

14   marijuana.  And that was dismissed.  In 1993, the

15   defendant was charged with distribution of heroin or

16   cocaine and was sent to prison again for three years.

17   He was discharged in July of 1995.

18        In 1997, the defendant was charged in Black

19   Hawk County, Iowa with possession of a controlled

20   substance, marijuana.  He failed to appear twice in

21   that case with a warrant issued and finally served --

22   The defendant received just a five-day suspended jail

23   term.

24        In 2000, the defendant was charged in Black

25   Hawk County and later convicted of domestic abuse

1    assault and a second count of assault.  In 2001, he

2    was charged and later convicted of operating while

3    intoxicated, first offense.

4         In 2002, he was charged and later convicted

5    of operating while intoxicated, second offense.  In

6    2006, he was charged and later convicted of driving

7    while barred.  And in 2009, he was charged with

8    possession of a controlled substance, marijuana,

9    second offense, and received two years probation.

10        Well, he actually received a 90-day jail

11   sentence with 88 days suspended and two years

12   probation.  He was discharged early from probation,

13   however, on April 1, 2010.

14        Depending on when it's alleged that Mr. Sapp

15   joined the conspiracy, the defendant may have been on

16   probation during part of the time that gives rise to

17   Count 1.

18        And finally, the Court's required to

19   consider the nature and seriousness of the danger to

20   any person or the community that would be posed by

21   Defendant's release.

22        In this case, the Court is obviously

23   concerned about the defendant's prior criminal record

24   and his failure to appear at court proceedings, but

25   I'm also concerned about the fact that he is addicted

1    to heroin and used heroin right up until the time of

2    his arrest, including after it was apparent that he

3    was the target of a Federal investigation.

4         Obviously, I can't release a defendant if

5    he's going to use controlled substances.  And based

6    upon the circumstances here, the Court believes that

7    it's unlikely that the defendant would comply with a

8    condition of release that he not use controlled

9    substances, since he continued to use for a couple of

10   months after it was apparent to him that he was a

11   target in this case.

12        There's rebuttable presumption that applies

13   to -- at least to two of the counts, and maybe all

14   three of the counts against Mr. Sapp.  And based upon

15   that rebuttable presumption and the circumstances

16   I've just described, the Court finds that the

17   government has met its burden of proof.

18        Therefore, Mr. Sapp, you will be detained

19   pending the trial.  You can appeal my decision by

20   filing a motion for review with Chief Judge Linda

21   Reade.  And Mr. O'Brien can assist you in doing that.

22        And Mr. Johnson's next.  Mr. Chatham.

23        MR. CHATHAM:  Thank you, Your Honor.

24        Again, this is a rebuttable presumption

25   case.  It involves controlled substances.

1     Mr. Johnson is somewhat unlike the other defendants,

2     in that he's not someone who is alleged to have been

3     intercepted and was not intercepted on the wiretaps.

4          However, the evidence here today has shown

5     that the defendant was involved -- Defendant Johnson

6     was involved in a controlled transaction January 12th

7     of 2011 of two grams of heroin.

8          Which, based on the testimony today, is not

9     consistent with a user quantity of heroin.  It's more

10    of than typical -- a typical user quantity on that

11    day.  So it could be inferred from that -- from the

12    quantity, that Mr. Johnson was buying for resale at

13    that point.

14         Mr. Johnson was also the subject of a search

15    warrant at his house in February, on February 15th of

16    2011.  At that time there were seven bindles of

17    heroin and a loaded nine-millimeter handgun found.

18         And the defendant, despite the fact that

19    there's no evidence before the Court that it was in

20    his bedroom or that his fingerprints were on the gun,

21    the defendant admitted that it was his gun and that

22    he had that gun for protection and that he bought it

23    on the street.  So --

24         And then additionally here, we've got the

25    defendant is apparently employed and has been since

1    June of 2010.  But also note that the defendant has

2    reported being a daily user of heroin for the past

3    13 years, with his last use being about two weeks

4    ago.

5           Which, again, is several months after he was

6    made aware of his involvement in a Federal

7    investigation into heroin sales.  He continued to use

8    heroin after that time.  As to the defendant's

9    criminal history, his first conviction comes in 1990

10   for aggravated criminal sexual assault.

11          And the defendant received ten years in

12   prison.  It looks like he spent about four and a half

13   years before being paroled, but was revoked two years

14   later and eventually discharged in 1998.

15          In '97, the defendant was again -- or was

16   convicted for the first time of a felony drug offense

17   in Cook County, Illinois for possession of cocaine,

18   more than 15 grams.  He received two years prison

19   and, again, was revoked on parole.

20          In 1999, the defendant received 14 years

21   prison for a possession of a controlled substance,

22   crack cocaine, charge in Cook County.  Paroled in

23   2005 and discharged in 2008.

24          And then in 2000 -- or in 1999, the

25   defendant was also convicted of violation of a sex

1    offender registry and received two years prison on

2    that in Cook County, Illinois.

3          When the defendant moved to Iowa, beginning

4    in 2010, he has convictions for operating a motor

5    vehicle while intoxicated, harass of public officer

6    or employee, driving while barred, habitual -- as a

7    habitual offender.  That conviction just occurred on

8    March 29th of this year.

9          And then two additional convictions from

10    this year for interference with official acts and

11    disorderly conduct, loud and ruckus noise.  And those

12    last two -- The arrests on those last two appear to

13    be about two days after his house was searched and

14    heroin taken out of it.

15          And the United States would note that a

16    number of those convictions occurred while the

17    defendant was on probation or on release or parole.

18          Based on the information contained in the

19    Pretrial Services Report and Officer Furman's

20    testimony today, the United States would assert that

21    there is no condition or combination of conditions

22    that would reasonably assure the appearance of

23    Mr. Johnson or the safety of the community should he

24    be released.  And we would ask that Mr. Johnson be

25    detained pending trial.

          1             THE COURT:  Mr. Wassmer.

          2             MR. WASSMER:  Yes, Your Honor.

          3             First, on the risk of flight, Mr. Johnson

          4    has no prior history of failure to appear or escape.

          5    The search warrant was executed on February 15th.

          6    Mr. Johnson was not arrested at that time.  He knew

          7    there was an investigation pending, but did not flee.

          8             When the arrest warrant after the indictment

          9    was issued on April 19th, he surrendered himself as

         10    requested by the officers after the officers had

         11    contacted his mother.

         12             Other ties to the community.  He's been

         13    steadily employed since moving to Waterloo in 2008.

         14    Currently employed as a construction laborer for

         15    Modern Builders.  And the employer's willing to

         16    continue that employment if Mr. Johnson is released.

         17             His mother and his girlfriend live in

         18    Waterloo.  And he can live with his mother, as he's

         19    done for the past year or so, if released.  On the

         20    substance abuse history, my client informs me that

         21    what's stated in the Pretrial Services Report is not

         22    entirely accurate.

         23             He says that he had first used heroin

         24    approximately 13 years ago, became a regular user in

         25    the last two or three years, with his last use being

1    about three weeks ago.

2              On his criminal history, the sexual assault

3    conviction was over 20 years ago, when he was 17.

4    The two felony drug possessions are both over ten

5    years ago.  One other thing I note about the 13 years

6    of substance abuse history is he was in prison during

7    a good chunk of that 13 years for the '99 conviction.

8    Imprisoned from '99 through 2005, it looks like from

9    the report.

10             He does have some more recent criminal

11   history.  Mostly the OWI, the driving while barred,

12   and then some misdemeanors.  It looks like primarily

13   interference with official acts and those kind of

14   things.

15             With regard to the strength of the evidence,

16   the most serious count here is Count 1, which is the

17   drug conspiracy.  And there was little evidence

18   presented that ties Mr. Johnson to that count.

19             There was apparently thousands of hours of

20   phone taps here.  And Mr. Johnson does not appear on

21   any of that -- those conversations.  His phone was

22   seized or was downloaded -- and the information was

23   downloaded.  And there was no evidence that any phone

24   numbers of any of the codefendants is on his cell

25   phone.

1          The only defendant -- the codefendant that

2     he might have a tie to is Mr. Mitchell.  And the

3     testimony was pretty vague as to what exactly that

4     tie was.  He's also charged in Count 11, which is a

5     controlled buy.  The Court didn't hear a whole lot

6     about the circumstances of that.

7          Count 14, the possession with intent to

8     distribute, relates to the seven foils that were

9     seized in the search warrant on February 15th.  And

10    then with the firearm, it's alleged that Mr. Johnson

11    admitted to owning that firearm.  I think that's

12    going to be a disputed issue going forward here.

13         With regard to danger to the community,

14    there really wasn't a whole lot of evidence that

15    Mr. Johnson was distributing heroin, other than the

16    controlled buy.  The only evidence was that

17    Mr. Johnson was an alternate source when one of the

18    other defendants here did not have heroin.

19         But the Court didn't hear any evidence as to

20    how often anyone bought heroin from Mr. Johnson or

21    what quantities were bought.  It was asserted that he

22    joined the conspiracy earlier this year, so we only

23    have, at most, a few months of sales, if that.

24         There's no indication that Mr. Johnson's

25    fingerprints were found on the gun or other types of

 1    evidence tying him to the gun, other than the alleged

 2    statement which was not recorded and which was not

 3    apparently even heard by the witness who testified

 4    here today.

 5          Accordingly, the government has not met its

 6    burden on showing a risk of flight or risk to the

 7    community.  And we would ask that Mr. Johnson be

 8    released on conditions.

 9          THE COURT:  In determining whether

10    Mr. Johnson should be released, the Court considers

11    the factors set forth in Section 3142(g).  First, I

12    would note that the defendant is charged in five

13    counts.  The first three counts carry rebuttal

14    presumption, Counts 1, 11 and 14.

15          Count 22 I don't believe has rebuttable

16    presumption.  And I'm not sure on Count 21, the

17    possession of a gun in relation to a drug trafficking

18    crime.  But in any event, the first three counts

19    clearly carry rebuttal presumption.

20          The grand jury has found probable cause to

21    believe the defendant has committed those offenses.

22    So there is a rebuttable presumption that attaches in

23    this case.  Nonetheless, the government has the

24    burden of proof.  And those factors are set forth in

25    Section 3142(g).

1          The Court's required to consider the nature

2     and circumstances of the offense charged.  In this

3     case, the defendant's charged both with drug offenses

4     and with firearm offenses.  The Court's required to

5     consider the weight of the evidence.

6          Based on the little snapshot of the

7     testimony that we got today, it does not appear that

8     the defendant was sort of a regular participant in

9     the alleged conspiracy.  It is alleged that he was a

10    so-called alternate source and that hook-up was made

11    between one of the alleged co-conspirators and

12    Mr. Johnson to provide heroin.

13         I guess it's probably not all that

14    productive for me to opine as to how strong or weak I

15    think that evidence may be.  The evidence with

16    respect to the firearms is somewhat stronger,

17    depending on whether or not you believe the testimony

18    that the defendant admitted that the firearm was his.

19    If he made that admission, then the evidence is

20    strong.

21         The history and characteristics of the

22    defendant are found in the Pretrial Services Report.

23    Defendant is 38 years old.  He was born and raised in

24    Chicago.  He moved to Waterloo about three years ago.

25    He is single and has never been married, although he

1   has one daughter from a prior relationship, who lives

2   in Chicago.

3           The defendant has been employed as a

4   construction laborer since June of 2010.  Prior to

5   that time, he also worked at Tyson Fresh Meats and

6   for a stucco company in Chicago.  He's in good

7   health, has no history of mental or emotional health

8   problems.

9           He admits to being a user of heroin.

10  Apparently, with the clarification by Mr. Wassmer,

11  started 13 years ago.  Has been using regularly since

12  he came to Waterloo about three years ago, and was a

13  daily user until about two weeks ago.

14          The defendant has a serious prior criminal

15  record dating back to 1990, when he was 17 years old.

16  He was charged with aggravated criminal sexual

17  assault.  He was sentenced in 1991 to 10 years in

18  prison.  Was paroled after about four and a half

19  years in 1995, in July.

20          In September of 1995 was charged with

21  disorderly conduct.  But that was stricken from the

22  docket with leave to reinstate.  In April of 1997,

23  while still on parole, the defendant was charged with

24  criminal trespass, but that was stricken from the

25  docket with leave to reinstate.

1          And then, September of 1997, he was charged

2     with possession of cocaine while still on parole.

3     And at that time, in October of 1997, his parole on

4     the sexual assault charge was revoked and he was

5     sentenced to two years in prison on a new cocaine

6     charge.  He was then paroled, after about eight

7     months, in June of 1998.

8          In November of 1998, while he was on

9     parole -- this would have been just like five months

10    after he was released from prison -- the defendant

11    was charged with possession of crack cocaine and also

12    with failing to register as a sex offender.

13         In May of 1999, his parole was revoked on

14    the earlier possession of cocaine charge and he

15    received a 14-year prison term on the new possession

16    of cocaine charge and a two-year prison term on the

17    failing to register as a sex offender charge.  And he

18    was then in prison from May of 1999 until May of

19    2005.  He was discharged from parole in May of 2008.

20         In August of 2009, which would have been

21    after he moved to Iowa, he was charged and later

22    convicted of operating while intoxicated, first

23    offense.  In February of 2010, while the OWI charge

24    was still pending, he was charged and later convicted

25    of harassment of a public officer or employee.

1          In September of 2010, while on probation for

2     the OWI charge, the defendant was charged with

3     driving while barred and later convicted.  In

4     February of 2011, while on probation, the defendant

5     was charged and later convicted of interference with

6     official acts and disorderly conduct, loud and ruckus

7     noise.

8          And, finally, the Court's required to

9     consider the nature and seriousness of the danger to

10     any person or the community that would be posed by

11     the defendant's release.  In this case, the Court is

12     particularly impressed by two things:

13          One is that the defendant has repeatedly

14     committed new criminal offenses while on probation,

15     parole, and pretrial release, including felony

16     offenses.  Accordingly, I'm not confident that he

17     would comply with the terms and conditions of his

18     release.

19          Second, the defendant admits using heroin on

20     a regular basis, even after it became apparent that

21     he was a target of a Federal investigation.  Again,

22     there's no reason for the Court to believe that the

23     defendant would be compliant with a condition that he

24     not use controlled substances.

25          Given those facts and circumstances and

```
 1    given the rebuttable presumption that's found in
 2    Section 3142(e), the Court concludes that the
 3    government has met its burden of proof in this
 4    regard, and Mr. Johnson will be detained pending
 5    trial.
 6              Mr. Johnson, you do have a right to appeal
 7    my decision.  That right to appeal's commenced by
 8    filing a motion for review by Chief Judge Linda
 9    Reade.  And Mr. Wassmer can assist you in doing that.
10    Written orders will be entered either later today or
11    tomorrow.
12              Is there anything else that needs to be
13    addressed, Mr. Chatham?
14              MR. CHATHAM:  No, Your Honor.
15              THE COURT:  Ms. Kelly?
16              MS. KELLY:  No.
17              THE COURT:  Mr. Clements?
18              MR. CLEMENTS:  No.
19              THE COURT:  Mr. O'Brien?
20              MR. O'BRIEN:  No, Your Honor.
21              THE COURT:  Mr. Wassmer?
22              MR. WASSMER:  No, Your Honor.
23              THE COURT:  That will conclude the hearing.
24              THE CLERK:  All rise.
25              (The proceedings concluded at 10:42 a.m.)
```

```
 1                    CERTIFICATE
 2          I, the undersigned, a Certified Shorthand
 3    Reporter and Notary Public of the State of Iowa, do
 4    hereby certify that I acted as the Certified
 5    Shorthand Reporter in the foregoing matter at the
 6    time and place indicated herein; that I took in
 7    shorthand the proceedings had at said time and place;
 8    that said shorthand notes were reduced to print under
 9    my supervision and direction by means of
10    computer-aided transcription; and that the foregoing
11    pages are a full and correct transcript of the
12    shorthand notes so taken.
13
14          IN WITNESS WHEREOF, I have hereunto set my
15    hand this 17th day of May, 2011.
16
17
18
19                         /s/ Sarah Dittmer
20                         Sarah J. Dittmer
21                         Certified Shorthand Reporter
22
23
24
25
```

## $

**$200** [1] - 16:17

## '

**'82** [1] - 61:5
**'83** [2] - 58:25, 59:1
**'92** [1] - 35:9
**'93** [1] - 61:8
**'96** [1] - 49:20
**'97** [1] - 68:15
**'99** [2] - 71:7, 71:8

## 1

**1** [6] - 30:4, 51:16, 65:13, 65:17, 71:16, 73:14
**10** [2] - 52:17, 75:17
**10-year** [3] - 35:19, 46:12, 64:7
**10:42** [1] - 78:25
**10th** [1] - 14:17
**11** [2] - 72:4, 73:14
**115** [1] - 2:13
**117** [1] - 12:20
**12** [1] - 36:7
**1200** [1] - 2:13
**1231** [1] - 2:10
**12th** [3] - 16:10, 29:8, 67:6
**13** [5] - 68:3, 70:24, 71:5, 71:7, 75:11
**13th** [1] - 6:20
**14** [3] - 68:20, 72:7, 73:14
**14-year** [1] - 76:15
**15** [10] - 47:20, 49:19, 50:4, 50:6, 53:5, 60:13, 60:15, 60:17, 63:12, 68:18
**15-year-old** [1] - 51:9
**1503** [1] - 2:8
**15th** [14] - 10:22, 13:7, 13:20, 16:25, 17:6, 18:8, 18:20, 25:25, 30:6, 31:16, 31:24, 67:15, 70:5, 72:9
**16** [1] - 25:15
**17** [4] - 3:5, 44:14, 71:3, 75:15
**175** [1] - 59:21
**17th** [1] - 1:25
**18** [3] - 40:11, 44:2, 50:7
**18-month** [1] - 56:15
**180** [1] - 59:21
**19** [2] - 49:20, 63:25
**1982** [5] - 58:24, 61:4,

63:25, 64:1, 64:2
**1983** [1] - 64:5
**1985** [1] - 35:8
**1987** [1] - 44:2
**1988** [1] - 44:6
**1989** [4] - 35:9, 38:18, 44:7, 64:11
**1990** [3] - 64:13, 68:9, 75:15
**1990s** [1] - 43:17
**1991** [4] - 44:18, 49:17, 53:24, 75:17
**1992** [4] - 38:2, 44:19, 49:18, 54:5
**1993** [7] - 35:14, 38:3, 44:25, 45:4, 54:7, 59:3, 64:14
**1994** [1] - 45:11
**1995** [10] - 35:15, 45:11, 45:13, 45:15, 45:17, 45:18, 49:20, 64:17, 75:19, 75:20
**1996** [5] - 45:22, 46:2, 54:17, 54:21
**1997** [6] - 46:5, 59:5, 64:18, 75:22, 76:1, 76:3
**1998** [6] - 46:6, 49:23, 55:4, 68:14, 76:7, 76:8
**1999** [6] - 42:25, 44:11, 68:20, 68:24, 76:13, 76:18
**19th** [3] - 19:4, 32:7, 70:9

## 2

**2** [4] - 9:6, 13:15, 29:17, 30:10
**20** [2] - 4:21, 71:3
**200** [1] - 2:5
**2000** [8] - 20:19, 36:19, 43:18, 49:23, 55:15, 59:11, 64:24, 68:24
**2001** [3] - 59:13, 65:1
**2002** [7] - 35:17, 38:7, 46:10, 49:24, 56:1, 59:18, 65:4
**2003** [3] - 50:3, 56:5, 59:19
**2004** [3] - 46:23, 50:5, 56:12
**2005** [5] - 50:8, 56:17, 68:23, 71:8, 76:19
**2006** [2] - 59:19, 65:6
**2007** [2] - 19:22, 59:21
**2008** [10] - 20:19, 20:24, 22:6, 35:5,

36:19, 43:7, 68:23, 70:13, 76:19
**2009** [6] - 43:18, 59:24, 60:1, 65:7, 76:20
**2010** [20] - 6:20, 12:2, 19:25, 20:3, 20:10, 21:11, 24:2, 24:7, 24:19, 34:21, 49:13, 53:12, 58:19, 60:19, 65:13, 68:1, 69:4, 75:4, 76:23, 77:1
**2011** [19] - 1:12, 1:25, 1:25, 10:23, 13:8, 14:18, 16:10, 16:25, 18:8, 22:4, 29:8, 30:5, 30:6, 34:21, 42:11, 47:20, 67:7, 67:16, 77:4
**2025** [1] - 4:9
**21** [2] - 3:6, 73:16
**22** [3] - 3:7, 45:4, 73:15
**23** [1] - 53:21
**23rd** [1] - 24:6
**24** [1] - 38:3
**25** [2] - 3:8, 38:3
**26** [2] - 53:20, 53:24
**26th** [1] - 1:11
**27** [1] - 52:17
**27th** [2] - 14:18, 25:14
**29th** [2] - 25:14, 69:8

## 3

**3** [1] - 3:4
**30** [1] - 21:24
**30-day** [1] - 56:10
**31** [2] - 13:23, 52:12
**3142(e** [3] - 51:20, 62:6, 78:2
**3142(e)** [3] - 34:8, 40:12, 40:21
**3142(g** [1] - 34:9
**3142(g)** [4] - 41:14, 62:8, 73:11, 73:25
**320** [1] - 2:5
**38** [1] - 74:23

## 4

**4** [1] - 42:11
**400** [1] - 2:3
**401** [1] - 2:3
**42** [1] - 42:22
**45** [1] - 58:24
**46** [1] - 53:4
**47** [1] - 63:10

## 5

**5-year** [1] - 56:2
**52401** [3] - 2:3, 2:6, 2:13
**52402** [1] - 2:11
**52803** [1] - 2:8

## 6

**60-day** [1] - 55:10
**60-days** [1] - 55:17
**6th** [1] - 1:25

## 7

**7** [1] - 52:17
**7th** [1] - 14:17

## 8

**88** [1] - 65:11

## 9

**90-day** [1] - 65:10
**9:00** [1] - 1:12
**9th** [2] - 8:5, 25:15

## A

**a.m** [2] - 1:12, 78:25
**able** [4] - 8:7, 16:2, 27:22, 37:5
**abuse** [7] - 43:13, 59:12, 59:16, 61:18, 64:25, 70:20, 71:6
**access** [1] - 39:12
**according** [4] - 37:15, 42:2, 43:16, 58:12
**accordingly** [3] - 41:24, 73:5, 77:16
**accurate** [1] - 70:22
**acquaintances** [1] - 60:24
**acted** [1] - 79:4
**activities** [1] - 11:14
**acts** [3] - 69:10, 71:13, 77:6
**addict** [1] - 34:24
**addicted** [2] - 9:1, 65:25
**addiction** [1] - 43:23
**addictive** [1] - 8:25
**addition** [5] - 39:15, 41:5, 42:9, 47:8, 51:15
**additional** [7] - 7:1, 16:22, 24:23, 33:4, 46:15, 57:13, 69:9

**additionally** [1] - 67:24
**address** [1] - 33:23
**addressed** [1] - 78:13
**admission** [2] - 11:8, 74:19
**admissions** [3] - 11:9, 17:8, 22:9
**admits** [7] - 43:15, 47:16, 53:15, 63:21, 63:22, 75:9, 77:19
**admitted** [6] - 34:19, 34:22, 42:9, 67:21, 72:11, 74:18
**age** [4] - 44:2, 53:20, 53:21, 53:24
**Agent** [2] - 31:10, 31:15
**agent** [11] - 6:14, 14:7, 17:22, 18:1, 30:17, 34:5, 38:23, 39:14, 50:15, 52:13, 60:3
**agent's** [1] - 37:6
**agents** [9] - 7:8, 7:19, 7:20, 14:3, 17:11, 19:17, 23:13, 24:21, 58:12
**ages** [1] - 36:10
**aggravated** [2] - 68:10, 75:16
**aggressive** [1] - 39:5
**ago** [15] - 43:19, 47:7, 47:25, 53:8, 53:18, 63:12, 68:4, 70:24, 71:1, 71:3, 71:5, 74:24, 75:11, 75:12, 75:13
**aided** [2] - 40:19, 79:10
**alcohol** [1] - 43:13
**allegations** [1] - 42:4
**alleged** [9] - 38:24, 39:2, 65:14, 67:2, 72:10, 73:1, 74:9, 74:11
**allegedly** [1] - 62:23
**alleges** [1] - 19:21
**alleging** [1] - 22:4
**alone** [1] - 63:13
**alternate** [4] - 16:5, 26:24, 72:17, 74:10
**America** [2] - 1:3, 4:7
**amount** [4] - 14:8, 23:19, 29:19, 29:22
**anomaly** [1] - 61:13
**apologize** [1] - 17:24
**apparent** [4] - 49:15, 66:2, 66:10, 77:20
**appeal** [5] - 48:7, 57:24, 66:19, 78:6

**appeal's** [2] - 57:24, 78:7
**appear** [17] - 37:16, 42:14, 46:17, 46:24, 52:24, 57:1, 57:2, 59:7, 59:8, 62:12, 62:21, 64:20, 65:24, 69:12, 70:4, 71:20, 74:7
**appearance** [4] - 40:16, 50:18, 60:6, 69:22
**appearances** [1] - 43:14
**appearing** [1] - 24:9
**applied** [1] - 62:6
**applies** [3] - 48:3, 51:12, 66:12
**Appling** [1] - 26:10
**appling** [2] - 26:14, 27:5
**approximate** [1] - 21:23
**April** [6] - 1:12, 32:7, 54:21, 65:13, 70:9, 75:22
**area** [8] - 8:15, 10:8, 18:25, 20:7, 37:12, 43:5, 60:23, 60:24
**argument** [1] - 33:9
**arguments** [1] - 33:21
**arraignment** [1] - 61:12
**arrangements** [6] - 19:9, 19:18, 19:19, 37:7, 39:19, 39:20
**arrest** [17] - 19:2, 32:3, 32:6, 32:10, 37:9, 43:1, 44:16, 46:21, 47:18, 49:20, 49:23, 50:2, 53:9, 63:13, 63:23, 66:2, 70:8
**arrested** [20] - 15:1, 31:24, 38:19, 44:2, 44:6, 44:8, 44:11, 44:13, 44:18, 44:19, 44:25, 45:23, 49:4, 53:21, 54:3, 54:15, 58:22, 59:18, 59:20, 70:6
**arrests** [5] - 35:8, 49:15, 50:11, 69:12
**arrived** [1] - 15:11
**arriving** [1] - 15:7
**Arthur** [8] - 1:6, 4:7, 9:12, 12:13, 18:2, 36:6, 37:11, 37:17
**assault** [10] - 59:12, 59:13, 59:16, 61:6, 65:1, 68:10, 71:2,

75:17, 76:4
**assert** [1] - 69:20
**asserted** [1] - 72:21
**asserts** [2] - 35:22, 60:4
**assist** [4] - 48:9, 58:1, 66:21, 78:9
**Assistant** [1] - 2:5
**assistant** [2] - 2:2, 4:12
**assisting** [1] - 19:14
**assume** [3] - 19:3, 24:15, 29:5
**assure** [4] - 40:15, 50:18, 60:6, 69:22
**attaches** [1] - 73:22
**attempt** [1] - 24:16
**attempted** [5] - 18:25, 22:22, 34:25, 50:3, 56:10
**attendance** [1] - 63:18
**Attorney** [2] - 2:2, 4:17
**attorney** [7] - 2:7, 2:10, 2:12, 4:12, 4:14, 4:16, 4:19
**audio** [2] - 29:12, 29:13
**August** [2] - 46:23, 76:20
**authorized** [1] - 9:18
**available** [3] - 19:11, 37:8, 62:21
**average** [1] - 9:9
**aware** [7] - 18:21, 24:13, 24:18, 30:23, 31:9, 39:11, 68:6

## B

**badly** [1] - 48:12
**bag** [1] - 9:5
**bags** [1] - 29:24
**barred** [6] - 59:20, 61:11, 65:7, 69:6, 71:11, 77:3
**Based** [1] - 12:14
**based** [14] - 10:1, 21:2, 26:12, 35:21, 48:1, 49:8, 50:14, 57:18, 60:2, 66:5, 66:14, 67:8, 69:18, 74:6
**basement** [2] - 30:22, 30:25
**basis** [2] - 11:24, 77:20
**battery** [4] - 38:20, 45:24, 46:7, 53:21
**bearing** [1] - 21:1

**became** [2] - 70:24, 77:20
**become** [1] - 9:1
**bedroom** [1] - 67:20
**began** [9] - 6:18, 6:19, 19:22, 19:24, 20:9, 21:6, 21:9, 21:11, 22:4
**beginning** [3] - 30:5, 58:25, 69:3
**behavior** [1] - 38:15
**behind** [1] - 39:12
**believes** [4] - 39:16, 48:1, 50:16, 66:6
**best** [1] - 13:25
**between** [8] - 12:23, 15:10, 27:5, 28:21, 32:4, 34:20, 43:18, 74:11
**big** [1] - 5:2
**bindles** [1] - 67:16
**bit** [2] - 5:3, 37:1
**Black** [4] - 35:17, 46:11, 64:18, 64:24
**bond** [2] - 38:2, 44:15
**born** [4] - 42:23, 53:4, 63:10, 74:23
**bought** [5] - 28:15, 67:22, 72:20, 72:21
**Brady** [1] - 2:8
**brother** [1] - 30:23
**brothers** [1] - 43:4
**brought** [1] - 7:8
**BRYAN** [3] - 3:3, 6:5, 6:13
**Bryan** [2] - 6:1, 6:13
**Bryson** [1] - 2:7
**builders** [1] - 70:15
**burden** [10] - 40:18, 41:9, 41:11, 41:13, 48:4, 57:21, 66:17, 73:6, 73:24, 78:3
**bus** [10] - 15:10, 15:12, 21:21, 22:23, 23:1, 49:4, 58:15, 61:22, 61:25, 62:18
**business** [3] - 36:21, 55:9, 55:14
**buy** [7] - 7:4, 7:5, 29:9, 52:21, 72:5, 72:16
**buying** [1] - 67:12
**buys** [7] - 14:20, 16:7, 19:25, 22:12, 22:14, 52:16, 52:19
**BY** [7] - 6:10, 17:21, 17:25, 21:18, 22:19, 25:3, 28:1

## C

**calculation** [1] - 55:16
**caption** [1] - 5:6
**car** [1] - 15:9
**carried** [1] - 39:1
**carry** [3] - 51:19, 73:13, 73:19
**carrying** [1] - 64:6
**case** [36] - 4:6, 6:14, 8:1, 9:4, 26:6, 34:6, 38:6, 38:8, 38:18, 39:9, 40:19, 41:1, 41:8, 41:19, 44:16, 47:5, 47:10, 47:18, 48:3, 48:22, 51:21, 57:9, 58:6, 59:17, 60:14, 61:11, 62:9, 64:21, 65:22, 66:11, 66:25, 73:23, 74:3, 77:11
**cases** [3] - 50:12, 57:12, 61:9
**causing** [1] - 59:12
**CEDAR** [1] - 1:2
**Cedar** [6] - 1:11, 2:3, 2:6, 2:11, 2:13, 8:5
**cell** [4] - 26:1, 26:4, 26:6, 71:24
**cellular** [1] - 6:23
**certainly** [1] - 36:24
**CERTIFICATE** [1] - 79:1
**certified** [1] - 6:6
**Certified** [3] - 79:2, 79:4, 79:21
**certify** [1] - 79:4
**cetera** [1] - 58:13
**character** [1] - 42:18
**characteristics** [6] - 35:3, 42:17, 49:10, 53:2, 63:8, 74:21
**charge** [5] - 30:4, 41:2, 44:24, 45:18, 46:16, 51:15, 53:22, 54:2, 54:11, 54:14, 54:18, 54:19, 55:6, 55:11, 55:12, 55:14, 55:19, 55:22, 56:3, 56:9, 56:13, 57:4, 58:25, 59:1, 59:3, 68:22, 76:4, 76:6, 76:14, 76:16, 76:17, 76:23, 77:2
**charged** [55] - 41:16, 41:19, 45:12, 45:14, 45:16, 45:23, 46:3, 46:7, 46:10, 51:14, 51:16, 51:24, 53:25, 54:10, 54:13, 54:23,

55:1, 55:4, 55:7, 55:9, 55:18, 55:20, 55:23, 55:25, 56:7, 56:9, 56:14, 61:1, 62:9, 62:20, 64:2, 64:6, 64:11, 64:13, 64:15, 64:18, 64:24, 65:2, 65:4, 65:6, 65:7, 72:4, 73:12, 74:2, 74:3, 75:16, 75:20, 75:23, 76:1, 76:11, 76:21, 76:24, 77:2, 77:5
**charges** [10] - 38:1, 40:3, 40:5, 47:1, 54:6, 55:8, 55:24, 56:4, 56:21, 64:4
**CHATHAM** [12] - 4:25, 6:1, 6:10, 17:17, 27:23, 32:20, 33:5, 34:2, 48:20, 58:5, 66:23, 78:14
**Chatham** [10] - 2:2, 4:12, 5:25, 32:19, 33:4, 33:23, 48:19, 58:4, 66:22, 78:13
**Chatham......** [1] - 3:4
**Chicago** [10] - 15:7, 15:10, 21:21, 42:23, 43:5, 49:5, 53:5, 74:24, 75:2, 75:6
**chief** [4] - 48:8, 57:25, 66:20, 78:8
**children** [4] - 36:10, 43:2, 53:10, 63:15
**chunk** [1] - 71:7
**CI** [1] - 14:20
**circumstances** [10] - 34:10, 40:2, 41:15, 48:2, 51:23, 66:6, 66:15, 72:6, 74:2, 77:25
**claims** [1] - 34:24
**clarification** [1] - 75:10
**clean** [1] - 37:22
**clearly** [1] - 73:19
**Clements** [10] - 2:7, 4:16, 5:8, 5:18, 21:15, 32:24, 33:10, 50:20, 58:1, 78:17
**CLEMENTS** [8] - 5:20, 21:16, 21:18, 22:16, 32:25, 33:12, 50:21, 78:18
**Clements......** [1] - 3:6
**CLERK** [2] - 4:1, 78:24
**Cleveland** [1] - 42:24
**client** [4] - 48:12, 50:22, 61:23, 70:20

client's [1] - 22:8
co [2] - 26:11, 74:11
co-conspirator [1] - 26:11
co-conspirators [1] - 74:11
cocaine [20] - 45:13, 46:12, 49:22, 50:6, 55:5, 55:11, 55:23, 56:1, 56:4, 56:7, 56:14, 59:3, 64:16, 68:17, 68:22, 76:2, 76:5, 76:11, 76:14, 76:16
code [1] - 40:11
codefendant [2] - 26:6, 72:1
codefendants [2] - 26:10, 71:24
collecting [1] - 51:6
combination [4] - 40:15, 50:17, 60:5, 69:21
coming [1] - 61:9
commenced [3] - 48:8, 57:24, 78:7
commencing [1] - 1:12
committed [4] - 40:23, 57:13, 73:21, 77:14
common [2] - 9:3, 44:4
commonly [1] - 14:7
community [23] - 35:23, 36:14, 37:14, 40:17, 42:20, 47:4, 47:10, 50:19, 51:2, 51:10, 57:7, 60:7, 60:12, 60:22, 60:25, 62:2, 62:3, 65:20, 69:23, 70:12, 72:13, 73:7, 77:10
company [2] - 36:21, 75:6
compilation [1] - 20:5
completely [1] - 21:25
compliance [1] - 38:12
compliant [1] - 77:23
comply [4] - 57:11, 57:17, 66:7, 77:17
computer [1] - 79:10
computer-aided [1] - 79:10
concern [2] - 38:15, 39:6
concerned [4] - 47:11, 47:15, 65:23, 65:25
concerning [1] - 43:14
concerns [3] - 43:10,

53:14, 63:20
conclude [1] - 78:23
concluded [1] - 78:25
concludes [1] - 78:2
conclusion [1] - 36:4
concurrent [1] - 38:4
condition [7] - 40:14, 42:18, 50:16, 60:5, 66:8, 69:21, 77:23
conditions [12] - 38:12, 39:24, 40:1, 40:7, 40:15, 50:17, 57:18, 60:5, 62:1, 69:21, 73:8, 77:17
conduct [8] - 7:17, 20:2, 43:12, 46:3, 54:23, 69:11, 75:21, 77:6
conducted [5] - 10:18, 16:7, 16:24, 20:4, 23:9
confidence [1] - 57:16
confident [1] - 77:16
confinement [2] - 55:10, 55:17
confirmed [2] - 11:13, 37:21
confusing [1] - 52:14
conjunction [1] - 13:2
connection [6] - 8:12, 26:14, 27:4, 28:20, 29:3, 60:25
connects [1] - 26:9
consider [15] - 40:6, 41:21, 42:16, 43:11, 46:19, 47:3, 51:22, 52:1, 57:6, 62:7, 65:9, 65:19, 74:1, 74:5, 77:9
considers [2] - 41:14, 74:5
consist [2] - 7:5, 9:6
consistent [2] - 11:24, 67:9
conspiracy [16] - 12:17, 15:24, 16:2, 19:21, 20:14, 22:5, 23:17, 30:4, 38:23, 39:10, 41:2, 51:15, 65:15, 71:17, 72:22, 74:9
conspiracy-type [1] - 23:17
conspirator [1] - 26:11
conspirators [1] - 74:11
construction [2] - 70:14, 75:4
contact [2] - 19:6,

32:5
contacted [2] - 32:13, 70:11
contacts [1] - 60:23
contained [3] - 34:4, 60:2, 69:18
container [1] - 30:19
contending [1] - 30:3
continue [2] - 60:20, 70:16
continued [4] - 47:16, 47:24, 66:9, 68:7
contraband [1] - 7:13
controlled [53] - 6:19, 7:1, 7:4, 7:5, 7:8, 7:13, 7:19, 14:14, 16:7, 19:25, 22:12, 22:14, 26:12, 27:21, 29:9, 34:11, 35:11, 42:10, 44:12, 44:14, 44:22, 44:25, 45:3, 48:23, 49:2, 49:16, 49:18, 49:22, 49:25, 52:16, 52:18, 52:21, 53:25, 54:3, 54:16, 54:19, 55:2, 55:21, 58:7, 58:10, 59:6, 59:24, 64:19, 65:8, 66:5, 66:8, 66:25, 67:6, 68:21, 72:5, 72:16, 77:24
conversations [4] - 25:8, 39:3, 49:1, 71:21
convicted [15] - 59:5, 59:11, 59:14, 59:19, 64:6, 64:25, 65:2, 65:4, 65:6, 68:16, 68:25, 76:22, 76:24, 77:3, 77:5
conviction [20] - 35:10, 35:13, 35:14, 35:15, 35:16, 35:17, 47:6, 49:20, 49:21, 49:23, 49:24, 50:3, 50:5, 59:23, 59:25, 64:1, 68:9, 69:7, 71:3, 71:7
convictions [10] - 45:20, 46:15, 47:12, 49:15, 49:16, 50:11, 56:23, 69:4, 69:9, 69:16
Cook [10] - 38:2, 44:5, 46:7, 49:17, 49:18, 49:25, 50:4, 68:17, 68:22, 69:2
cooperating [1] - 26:21
cooperative [1] -

19:16, 39:18
coordinate [1] - 28:3
coordinated [2] - 8:6, 27:21
coordination [1] - 8:7
correct [27] - 18:2, 18:6, 18:10, 19:1, 19:22, 19:23, 20:1, 25:5, 25:6, 25:18, 25:19, 26:1, 26:25, 27:1, 27:3, 29:18, 30:9, 30:14, 31:11, 31:24, 31:25, 32:1, 32:7, 32:8, 32:11, 32:15, 79:11
correctly [3] - 26:19, 30:21, 52:12
counsel [1] - 39:22
Count [5] - 30:4, 51:16, 65:17, 71:16, 73:15
count [11] - 41:3, 44:14, 45:2, 46:14, 51:17, 65:1, 71:16, 71:18, 72:4, 72:7, 73:16
Counts [1] - 73:14
counts [11] - 41:20, 45:5, 51:14, 51:16, 62:10, 66:13, 66:14, 73:13, 73:18
county [2] - 15:6, 20:6
County [14] - 35:18, 38:2, 44:5, 46:7, 46:11, 49:17, 49:18, 50:1, 50:4, 64:19, 64:25, 68:17, 68:22, 69:2
couple [3] - 21:19, 39:11, 66:9
course [2] - 9:24, 15:25
Court [4] - 4:2, 4:6, 4:21, 6:17
court [41] - 4:13, 9:18, 38:7, 38:13, 39:7, 39:10, 39:24, 40:6, 40:11, 40:14, 41:13, 42:1, 43:14, 46:17, 47:10, 48:1, 50:13, 51:12, 51:22, 53:2, 57:1, 57:9, 57:16, 57:19, 61:14, 61:15, 62:3, 62:7, 63:3, 63:7, 65:22, 65:24, 66:6, 66:16, 67:19, 72:5, 72:19, 73:10, 77:11, 77:22, 78:2
COURT [41] - 1:1, 4:5, 5:1, 5:14, 5:18, 5:21,

5:23, 5:25, 6:3, 6:8, 17:18, 17:23, 21:15, 22:17, 24:25, 27:25, 32:19, 32:21, 32:23, 33:1, 33:3, 33:6, 33:10, 33:14, 33:17, 33:20, 35:25, 40:9, 48:16, 48:18, 50:20, 51:11, 60:9, 62:5, 70:1, 73:9, 78:15, 78:17, 78:19, 78:21, 78:23
Court's [1] - 41:21
court's [11] - 42:16, 43:11, 46:19, 47:2, 47:15, 52:1, 57:5, 65:18, 74:1, 74:4, 77:8
court-authorized [1] - 9:18
Courthouse [1] - 1:11
CR11 [1] - 4:9
CR11-2025-8 [1] - 1:4
crack [4] - 35:19, 46:12, 68:22, 76:11
crime [2] - 41:17, 73:18
crimes [1] - 57:13
criminal [21] - 35:6, 35:7, 37:24, 43:13, 44:1, 50:22, 50:25, 53:19, 58:23, 61:3, 61:19, 63:24, 65:23, 68:9, 68:10, 71:2, 71:10, 75:14, 75:16, 75:24, 77:14
CROSS [3] - 17:20, 21:17, 22:18
cross [2] - 5:5, 25:2
Cross [4] - 3:5, 3:6, 3:7, 3:8
cROSS-EXAMINATION [1] - 25:2
Cross-Examination [4] - 3:5, 3:6, 3:7, 3:8
CROSS-EXAMINATION [3] - 17:20, 21:17, 22:18
cross-examined [1] - 5:5
cumbersome [1] - 5:3
current [1] - 46:20
custody [1] - 19:12
cutting [3] - 14:3, 14:7, 52:13

___

**D**

daily [6] - 43:19,

53:15, 58:20, 63:21, 68:2, 75:13
**Dan** [1] - 4:17
**danger** [9] - 35:23, 37:14, 47:3, 51:10, 57:6, 62:2, 65:19, 72:13, 77:9
**dangers** [2] - 8:16, 8:22
**Daniel** [3] - 2:2, 2:9, 4:12
**dash** [1] - 4:9
**date** [9] - 13:20, 15:5, 18:7, 18:12, 23:1, 23:10, 23:12, 64:8, 64:9
**dates** [3] - 61:4, 61:14, 61:15
**dating** [6] - 35:8, 44:1, 53:20, 58:23, 63:24, 75:15
**daughter** [1] - 75:1
**Davenport** [1] - 2:8
**days** [11] - 11:22, 21:5, 21:24, 25:16, 55:16, 58:24, 59:9, 59:21, 59:22, 65:11, 69:13
**dealers** [1] - 10:9
**dealing** [1] - 52:4
**death** [1] - 9:2
**December** [3] - 20:24, 36:19, 43:7
**decision** [4] - 48:7, 57:24, 66:19, 78:7
**defendant** [120] - 4:13, 4:16, 11:6, 11:8, 17:4, 17:5, 33:22, 34:22, 34:23, 35:4, 35:19, 35:22, 40:10, 40:13, 40:23, 41:2, 41:8, 41:9, 41:19, 42:5, 42:8, 42:11, 42:22, 43:6, 43:8, 43:15, 43:20, 44:1, 44:10, 44:16, 44:24, 45:4, 45:8, 45:12, 46:4, 46:6, 46:14, 46:17, 46:21, 46:22, 47:5, 47:11, 47:16, 47:21, 48:5, 48:24, 49:12, 50:7, 51:13, 51:20, 52:3, 52:24, 53:2, 53:10, 53:14, 53:19, 53:24, 54:2, 54:9, 54:15, 54:21, 55:4, 55:6, 55:8, 55:18, 55:23, 55:25, 56:6, 56:9, 56:13, 57:2, 57:10, 57:17,

57:20, 57:22, 58:8, 58:23, 59:11, 60:7, 63:1, 63:8, 63:10, 63:20, 63:24, 64:5, 64:11, 64:15, 64:18, 64:22, 64:24, 65:15, 66:4, 66:7, 67:5, 67:18, 67:21, 67:25, 68:1, 68:11, 68:15, 68:20, 68:25, 69:3, 69:17, 72:1, 73:12, 73:21, 74:8, 74:18, 74:22, 74:23, 75:3, 75:14, 75:23, 76:10, 77:2, 77:4, 77:13, 77:19, 77:23
**Defendant** [3] - 4:15, 4:18, 67:5
**defendant's** [20] - 35:2, 35:6, 42:3, 42:5, 42:13, 42:17, 43:12, 47:5, 49:6, 50:11, 51:24, 52:8, 56:25, 57:8, 63:19, 65:21, 65:23, 68:8, 74:3, 77:11
**Defendants** [1] - 1:8
**defendants** [8] - 4:22, 5:6, 5:9, 6:15, 9:11, 62:14, 67:1, 72:18
**Defender** [1] - 2:5
**defense** [1] - 39:11
**defer** [1] - 10:15
**deliver** [4] - 35:11, 44:23, 45:1, 45:3
**delivered** [1] - 1:25
**delivery** [7] - 49:17, 49:24, 54:3, 55:21, 56:3, 56:6, 56:7
**denied** [1] - 23:17
**describe** [1] - 8:22
**described** [4] - 21:19, 22:12, 62:15, 66:16
**describing** [1] - 38:23
**description** [1] - 39:16
**despite** [1] - 67:18
**destined** [1] - 8:14
**details** [1] - 52:18
**detained** [13] - 4:22, 35:24, 40:25, 41:8, 41:11, 48:5, 50:19, 51:20, 57:22, 60:8, 66:18, 69:25, 78:4
**detention** [4] - 4:10, 33:23, 34:8, 40:13
**determine** [2] - 42:1, 63:3
**determining** [3] - 40:9, 41:12, 73:9
**different** [1] - 6:23

**difficult** [2] - 41:25, 63:2
**DIRECT** [1] - 6:9
**Direct** [1] - 3:4
**direct** [1] - 26:20
**direction** [1] - 79:9
**directly** [1] - 27:5
**disagree** [1] - 38:16
**discharged** [10] - 38:10, 46:5, 56:19, 61:15, 64:9, 64:17, 65:12, 68:14, 68:23, 76:19
**discussed** [3] - 7:11, 11:20, 52:4
**dismissed** [4] - 38:21, 55:3, 64:12, 64:14
**disorderly** [5] - 46:3, 54:23, 69:11, 75:21, 77:6
**disposition** [4] - 46:4, 53:21, 55:13, 64:3
**disputed** [1] - 72:12
**distribute** [3] - 35:18, 41:3, 46:12, 51:18, 72:8
**distributing** [3] - 11:15, 47:14, 72:15
**distribution** [8] - 10:4, 41:4, 42:9, 47:9, 51:17, 52:22, 59:2, 64:15
**DISTRICT** [2] - 1:1, 1:1
**District** [3] - 4:2, 8:12
**Dittmer** [1] - 79:20
**DIVISION** [1] - 1:2
**docket** [7] - 44:3, 45:25, 46:9, 54:11, 54:25, 75:22, 75:25
**domestic** [6] - 38:20, 45:23, 46:7, 59:12, 59:16, 64:25
**done** [8] - 9:23, 11:5, 13:3, 13:17, 16:18, 20:6, 43:8, 70:19
**Dormin** [6] - 14:4, 14:6, 14:7, 14:10, 14:12, 52:13
**dosage** [2] - 9:3, 9:9
**down** [1] - 33:3
**download** [1] - 26:4
**downloaded** [3] - 26:1, 71:22, 71:23
**drives** [1] - 7:23
**driving** [6] - 59:20, 61:10, 65:6, 69:6, 71:11, 77:3
**drug** [31] - 11:2, 15:6, 20:6, 34:15, 34:17, 35:13, 35:17, 37:25,

38:5, 40:24, 41:17, 41:20, 42:6, 43:13, 45:20, 46:15, 47:12, 48:25, 51:25, 52:4, 54:6, 56:21, 56:23, 61:8, 64:3, 68:16, 71:4, 71:17, 73:17, 74:3
**drug-related** [2] - 48:25, 51:25
**drugs** [1] - 52:22
**during** [15] - 7:10, 7:18, 8:6, 9:23, 11:1, 11:9, 12:10, 13:22, 21:5, 24:21, 39:2, 60:14, 60:16, 65:16, 71:6
**Dusty** [1] - 30:17
**Dwayne** [1] - 26:10

### E

**early** [3] - 43:17, 61:11, 65:12
**Ed** [1] - 12:9
**Edward** [2] - 1:6, 4:8
**Edwards** [1] - 28:25
**effect** [1] - 24:4
**efforts** [1] - 37:12
**eight** [3] - 51:1, 53:7, 76:6
**either** [7] - 7:5, 7:15, 9:5, 28:24, 57:11, 57:13, 78:10
**Elkhart** [1] - 42:23
**emotional** [4] - 43:9, 53:14, 63:20, 75:7
**employed** [8] - 20:18, 36:16, 36:18, 51:7, 67:25, 70:13, 70:14, 75:3
**employee** [2] - 69:6, 76:25
**employer's** [1] - 70:15
**employment** [7] - 42:19, 51:3, 51:4, 53:12, 60:18, 63:17, 70:16
**end** [2] - 35:5, 61:3
**ended** [1] - 60:18
**enforcement** [2] - 39:18, 52:23
**ensure** [1] - 7:13
**entangled** [1] - 26:18
**entered** [1] - 78:10
**entire** [1] - 26:16
**entirely** [1] - 70:22
**entitled** [1] - 47:4
**escape** [1] - 70:4
**escort** [1] - 48:15

**essentially** [1] - 14:10
**establishes** [1] - 41:6
**et** [1] - 58:13
**event** [1] - 73:18
**events** [2] - 47:1, 57:3
**eventually** [2] - 59:9, 68:14
**evidence** [46] - 5:4, 5:10, 26:9, 27:7, 27:10, 27:12, 33:4, 33:7, 33:8, 33:11, 33:15, 33:18, 34:12, 37:13, 38:11, 39:4, 39:9, 41:10, 41:22, 42:1, 42:14, 47:13, 49:9, 52:2, 52:22, 52:24, 62:11, 62:12, 62:13, 63:3, 63:5, 67:4, 67:19, 71:15, 71:17, 71:23, 72:14, 72:16, 72:19, 73:1, 74:5, 74:15, 74:19
**exact** [1] - 21:25
**exactly** [1] - 72:3
**Examination** [5] - 3:4, 3:5, 3:6, 3:7, 3:8
**EXAMINATION** [5] - 6:9, 17:20, 21:17, 22:18, 25:2
**examined** [2] - 5:5, 6:7
**example** [2] - 8:3, 14:11
**excuse** [1] - 32:23
**excused** [1] - 48:16
**executed** [2] - 25:25, 47:19, 70:5
**exists** [1] - 57:19
**expand** [1] - 14:8
**experience** [1] - 8:20
**explain** [3] - 6:17, 7:3, 8:3
**express** [1] - 37:4
**extended** [2] - 43:2, 43:4
**extracurricular** [1] - 21:3
**extremely** [1] - 8:25

### F

**F-U-R-M-A-N** [1] - 6:13
**facing** [1] - 40:4
**fact** [6] - 47:11, 47:15, 47:24, 57:10, 65:25, 67:18
**factors** [7] - 34:9, 41:14, 51:22, 62:7, 73:11, 73:24
**facts** [3] - 41:24, 48:2,

77:25
**failed** [5] - 46:17, 57:1, 57:11, 61:12, 64:20
**failing** [2] - 76:12, 76:17
**failure** [2] - 65:24, 70:4
**failures** [2] - 59:7, 59:8
**fairly** [1] - 42:15
**familiar** [1] - 8:16
**family** [8] - 36:13, 36:23, 37:4, 42:18, 43:2, 43:4, 53:6, 60:23
**far** [2] - 11:14, 35:8
**father** [1] - 43:4
**favor** [1] - 34:7
**February** [21] - 10:22, 13:7, 13:20, 16:25, 17:6, 18:8, 18:20, 25:25, 30:6, 31:16, 31:24, 34:21, 47:20, 54:16, 61:21, 67:15, 70:5, 72:9, 76:23, 77:4
**Federal** [7] - 1:11, 2:5, 31:16, 47:22, 66:3, 68:6, 77:21
**felonies** [2] - 56:22, 57:15
**felony** [14] - 35:10, 35:13, 35:15, 35:17, 45:20, 46:15, 47:12, 49:15, 50:5, 56:23, 59:2, 68:16, 71:4, 77:15
**few** [4] - 35:1, 55:20, 56:8, 72:23
**fifth** [1] - 44:12
**filed** [1] - 19:4
**filing** [4] - 48:8, 57:25, 66:20, 78:8
**finally** [5] - 47:2, 57:5, 64:21, 65:18, 77:8
**financial** [1] - 42:19
**fingerprints** [3] - 31:7, 67:20, 72:25
**finished** [1] - 55:17
**firearm** [12] - 35:9, 38:18, 39:1, 41:18, 44:9, 44:17, 47:7, 72:10, 72:11, 74:4, 74:18
**firearms** [2] - 23:7, 74:16
**fired** [1] - 63:16
**first** [18] - 5:7, 24:5, 24:9, 33:24, 36:2, 43:17, 45:6, 55:10,

61:11, 65:3, 68:9, 68:16, 70:3, 70:23, 73:11, 73:13, 73:18, 76:22
**First** [1] - 2:3
**fit** [1] - 38:7
**five** [12] - 36:10, 38:9, 51:14, 51:25, 56:2, 56:24, 58:21, 59:9, 63:22, 64:22, 73:12, 76:9
**five-day** [1] - 64:22
**flee** [3] - 24:16, 32:1, 70:7
**flight** [7] - 35:22, 36:3, 51:10, 60:11, 61:21, 70:3, 73:6
**focus** [1] - 9:11
**focuses** [1] - 37:24, 39:8
**foil** [3] - 9:5, 13:15, 23:23
**foils** [17] - 13:11, 13:13, 13:23, 16:14, 16:22, 22:8, 23:21, 23:23, 29:16, 29:24, 30:7, 52:9, 52:12, 58:13, 62:24, 72:8
**folks** [1] - 26:17
**followed** [3] - 7:18, 7:22, 52:20
**follows** [1] - 6:7
**Foods** [1] - 24:20
**foods** [1] - 60:17
**FOR** [1] - 1:1
**force** [3] - 15:6, 20:6, 41:5
**foregoing** [2] - 79:5, 79:10
**forfeited** [1] - 44:15
**forth** [5] - 41:14, 62:6, 62:7, 73:11, 73:24
**forward** [1] - 72:12
**four** [11] - 6:15, 45:6, 45:8, 46:14, 47:12, 53:10, 53:16, 54:22, 55:1, 68:12, 75:18
**fourth** [1] - 49:3
**frame** [1] - 12:1
**fresh** [2] - 34:1, 75:5
**friends** [1] - 60:24
**front** [1] - 24:11
**full** [3] - 20:18, 20:24, 79:11
**full-time** [2] - 20:18, 20:24
**FURMAN** [2] - 3:3, 6:5
**Furman** [6] - 6:2, 6:13, 41:6, 42:2, 47:8, 50:15, 52:2, 52:19,

62:15
**furman** [1] - 34:5
**Furman's** [2] - 60:3, 69:19
**future** [1] - 61:14

## G

**gathered** [2] - 20:8, 39:9
**general** [1] - 48:21
**generally** [12] - 6:17, 7:3, 8:22, 8:25, 9:4, 9:6, 19:8, 19:16, 25:16, 47:9, 52:19, 52:21
**girlfriend** [4] - 30:24, 51:8, 53:8, 70:17
**girlfriends** [1] - 30:24
**given** [4] - 54:17, 64:7, 77:25, 78:1
**governed** [1] - 40:11
**government** [14] - 4:11, 5:4, 37:23, 39:8, 39:16, 40:18, 41:12, 41:13, 48:4, 57:21, 66:17, 73:5, 73:23, 78:3
**gram** [1] - 14:11
**grams** [19] - 9:6, 11:23, 13:15, 13:16, 14:11, 15:14, 16:15, 23:22, 29:17, 30:10, 34:19, 34:20, 49:5, 49:19, 50:4, 50:6, 58:16, 67:7, 68:18
**grand** [2] - 41:1, 73:20
**grounds** [1] - 45:1
**guess** [8] - 5:1, 12:25, 25:9, 25:10, 26:2, 27:20, 63:5, 74:13
**guilt** [1] - 42:13
**gun** [12] - 17:8, 17:12, 30:18, 31:5, 31:8, 67:20, 67:21, 67:22, 72:25, 73:1, 73:17

## H

**habit** [1] - 35:1
**habitual** [3] - 59:20, 69:6, 69:7
**half** [3] - 12:20, 68:12, 75:18
**hand** [2] - 6:4, 79:15
**handgun** [3] - 16:23, 17:2, 67:17
**handguns** [1] - 8:8
**hanging** [1] - 61:20
**harass** [1] - 69:5

**harassment** [1] - 76:25
**Hawk** [4] - 35:17, 46:11, 64:19, 64:25
**Hayes** [1] - 28:23
**head** [1] - 61:20
**health** [7] - 43:9, 43:10, 53:13, 53:14, 63:19, 75:7
**hear** [3] - 33:20, 72:5, 72:19
**heard** [7] - 22:2, 38:25, 39:15, 39:17, 52:6, 61:23, 73:3
**hearing** [7] - 4:10, 5:2, 52:5, 52:18, 62:10, 63:6, 78:23
**heavily** [1] - 39:8
**held** [1] - 1:10
**hereby** [1] - 79:4
**herein** [1] - 79:6
**hereinafter** [1] - 6:6
**hereunto** [1] - 79:14
**heroin** [95] - 6:20, 7:1, 8:1, 8:8, 8:14, 8:16, 8:23, 8:25, 9:1, 9:3, 9:6, 9:8, 10:3, 11:3, 11:10, 11:15, 11:23, 12:4, 12:19, 13:11, 13:14, 13:23, 14:8, 14:10, 15:1, 15:8, 15:13, 15:16, 16:2, 16:3, 16:12, 16:23, 17:15, 18:4, 22:8, 23:2, 23:16, 23:19, 26:22, 28:15, 34:20, 34:23, 37:17, 37:20, 41:3, 41:4, 42:9, 43:16, 43:19, 47:9, 47:14, 47:17, 47:24, 49:5, 49:7, 49:19, 49:25, 50:4, 52:9, 52:12, 53:15, 54:13, 54:18, 55:7, 55:12, 55:22, 56:3, 56:6, 56:9, 56:10, 56:13, 58:13, 58:16, 58:21, 59:3, 62:23, 62:25, 63:21, 64:15, 66:1, 67:7, 67:9, 67:17, 68:2, 68:7, 68:8, 69:14, 70:23, 72:15, 72:18, 72:20, 74:12, 75:9, 77:19
**higher** [1] - 9:2
**himself** [9] - 19:10, 32:3, 32:14, 36:23, 37:7, 37:8, 39:21, 62:4, 70:9
**history** [28] - 35:2,

35:7, 37:24, 38:16, 42:17, 43:9, 43:12, 43:14, 49:10, 49:14, 50:23, 51:7, 53:1, 53:13, 58:23, 61:4, 63:8, 63:20, 63:24, 68:9, 70:4, 70:20, 71:2, 71:6, 71:11, 74:21, 75:7
**hit** [1] - 23:23
**Holiday** [1] - 37:3
**home** [4] - 23:10, 36:11, 55:10, 55:17
**honestly** [1] - 31:22
**Honor** [25] - 4:25, 5:20, 5:24, 17:17, 25:1, 27:23, 32:18, 32:25, 33:2, 33:5, 33:16, 33:19, 34:2, 39:23, 48:11, 48:17, 48:20, 50:21, 58:5, 60:10, 66:23, 70:2, 78:14, 78:20, 78:22
**Honorable** [1] - 4:3
**hook** [1] - 74:10
**hook-up** [1] - 74:10
**hope** [1] - 52:14
**hours** [5] - 25:7, 25:12, 25:13, 25:15, 71:19
**house** [9] - 13:4, 13:18, 22:8, 30:20, 31:3, 49:6, 62:20, 67:15, 69:13
**hundreds** [2] - 25:12, 34:14

## I

**identified** [1] - 38:1
**Ill** [2] - 24:5, 58:9
**illegally** [1] - 34:24
**Illinois** [9] - 35:12, 35:15, 44:5, 49:17, 49:19, 50:1, 54:1, 68:17, 69:2
**implicating** [1] - 52:7
**impose** [2] - 39:24, 57:18
**imposed** [1] - 38:13
**impressed** [1] - 77:12
**imprisoned** [1] - 71:8
**IN** [2] - 1:1, 79:14
**incident** [1] - 49:3
**include** [1] - 41:15
**including** [7] - 41:16, 42:17, 43:12, 48:2, 49:15, 66:2, 77:15
**income** [1] - 37:4
**incriminating** [2] -

9:20, 63:1
**INDEX** [1] - 3:1
**Indiana** [1] - 42:24
**indicate** [3] - 47:13, 51:13, 56:18
**indicated** [9] - 21:20, 21:21, 22:7, 26:21, 31:10, 48:12, 53:16, 62:16, 79:6
**indicates** [2] - 43:7, 44:15
**indication** [6] - 18:24, 37:10, 46:16, 56:25, 62:19, 72:24
**indications** [1] - 38:10
**indictment** [4] - 19:3, 19:21, 32:7, 70:8
**individual** [2] - 28:2, 61:25
**individuals** [2] - 12:9, 40:4
**inferred** [1] - 67:11
**informant** [8] - 7:6, 7:7, 7:12, 7:15, 7:21, 7:22, 28:4
**informants** [1] - 28:19
**information** [16] - 11:13, 20:8, 20:13, 20:16, 24:11, 25:25, 28:13, 34:4, 35:21, 39:13, 42:21, 50:14, 58:17, 60:2, 69:18, 71:22
**informs** [1] - 70:20
**injury** [2] - 59:12, 61:6
**inn** [1] - 37:4
**innocence** [1] - 42:13
**instance** [3] - 14:25, 36:2, 38:19
**instances** [2] - 34:6, 38:20
**intelligence** [1] - 20:5
**intent** [9] - 35:11, 35:18, 44:22, 45:1, 45:3, 46:11, 51:18, 61:6, 72:7
**intention** [1] - 5:1
**intercepted** [14] - 10:2, 12:10, 12:15, 15:21, 21:21, 25:5, 25:20, 34:15, 42:4, 48:25, 52:3, 58:8, 67:3
**intercepts** [1] - 6:22
**interdicted** [2] - 15:5, 15:9
**interdiction** [2] - 22:23, 23:1
**interference** [3] - 69:10, 71:13, 77:5

**intertwined** [1] - 26:17
**interview** [6] - 11:5, 11:9, 22:22, 31:13, 34:16, 34:18
**interviewed** [5] - 17:4, 17:6, 30:16, 31:11, 42:8
**interviews** [3] - 22:21, 28:16, 28:18
**intoxicated** [5] - 59:15, 65:3, 65:5, 69:5, 76:22
**investigation** [23] - 6:18, 6:21, 8:13, 9:13, 10:5, 15:25, 18:22, 20:4, 20:9, 20:17, 20:25, 21:2, 21:6, 21:9, 24:14, 31:17, 37:11, 47:23, 66:3, 68:7, 70:7, 77:21
**investigations** [1] - 20:2
**investigative** [1] - 20:23
**involved** [6] - 11:21, 14:23, 16:1, 22:14, 67:5, 67:6
**involvement** [6] - 10:3, 23:17, 39:17, 50:24, 62:19, 68:6
**involves** [3] - 41:17, 48:23, 66:25
**involving** [2] - 22:13, 58:7
**IOWA** [1] - 1:1
**Iowa** [16] - 1:11, 2:3, 2:6, 2:8, 2:11, 2:13, 4:2, 8:12, 10:8, 20:7, 61:10, 61:12, 64:19, 69:3, 76:21, 79:3
**issue** [3] - 4:21, 33:21, 72:12
**issued** [5] - 19:2, 32:6, 32:11, 64:21, 70:9
**issues** [1] - 48:22
**items** [1] - 13:12

**J**

**jail** [6] - 56:11, 58:24, 59:9, 59:21, 64:22, 65:10
**James** [2] - 2:7, 4:16
**Jane** [2] - 2:4, 4:14
**January** [11] - 14:17, 16:10, 19:22, 29:8, 42:11, 46:6, 52:17, 56:12, 67:6
**Jersey** [3] - 59:2, 59:3,

63:11
**job** [1] - 36:20
**jobs** [2] - 36:24, 43:8
**Johnson** [61] - 1:7, 2:13, 4:9, 4:18, 15:20, 15:21, 16:8, 16:13, 17:5, 17:14, 25:4, 25:17, 25:22, 25:24, 26:9, 26:13, 26:24, 27:2, 27:6, 27:13, 27:18, 27:21, 28:3, 28:7, 28:11, 28:14, 28:21, 30:3, 30:13, 30:16, 31:2, 31:7, 31:11, 31:15, 31:19, 31:20, 31:23, 32:5, 32:10, 32:14, 67:1, 67:5, 67:12, 67:14, 69:23, 69:24, 70:3, 70:6, 70:16, 71:18, 71:20, 72:10, 72:15, 72:17, 72:20, 73:7, 73:10, 74:12, 78:4, 78:6
**Johnson's** [5] - 16:19, 26:6, 30:24, 66:22, 72:24
**joined** [3] - 30:4, 65:15, 72:22
**Jon** [2] - 1:14, 4:3
**judge** [4] - 4:3, 48:9, 57:25, 66:20
**Judge** [2] - 1:14, 78:8
**judgment** [1] - 42:12
**July** [3] - 45:13, 64:17, 75:19
**June** [6] - 4:21, 46:10, 60:1, 68:1, 75:4, 76:7
**jury** [2] - 41:1, 73:20
**justice** [1] - 50:25

**K**

**Kelly** [12] - 2:4, 4:14, 5:7, 5:12, 5:14, 17:18, 32:21, 33:6, 33:24, 35:25, 48:9, 78:15
**KELLY** [13] - 5:13, 5:16, 17:19, 17:21, 17:24, 17:25, 21:13, 32:22, 33:8, 36:1, 48:11, 48:17, 78:16
**Kelly.........** [1] - 3:5
**kick** [1] - 35:1
**kilograms** [1] - 9:8
**kilos** [1] - 8:8
**kind** [1] - 71:13
**knowledge** [1] - 26:5

**known** [1] - 61:19
**knows** [2] - 27:13, 28:10

**L**

**laborer** [2] - 70:14, 75:4
**Lafayette** [1] - 12:20
**laid** [1] - 51:5
**large** [1] - 7:25
**last** [15] - 6:12, 21:24, 35:1, 36:7, 36:8, 37:18, 51:5, 60:13, 60:15, 63:17, 68:3, 69:12, 70:25
**latest** [1] - 45:18
**lavalier** [1] - 5:15
**Law** [3] - 2:7, 2:10, 2:12
**law** [2] - 39:18, 52:23
**Lawrence** [2] - 1:7, 4:8
**leader** [2] - 12:25, 62:17
**learn** [1] - 20:17
**learned** [3] - 10:5, 16:1, 28:16
**least** [9] - 37:7, 37:22, 47:21, 47:23, 56:22, 59:7, 61:20, 66:13
**leave** [1] - 18:25, 37:12, 38:21, 44:3, 45:25, 46:9, 54:11, 54:25, 75:22, 75:25
**legal** [2] - 51:11, 62:5
**lengthy** [2] - 35:7, 53:19
**less** [3] - 49:19, 50:4, 50:6
**level** [1] - 10:6
**limited** [2] - 41:25, 61:2
**Linda** [4] - 48:9, 57:25, 66:20, 78:8
**listed** [1] - 5:6
**live** [4] - 31:2, 43:5, 70:17, 70:18
**lived** [6] - 30:24, 36:6, 42:23, 51:1, 53:4, 60:13
**lives** [5] - 30:25, 36:12, 43:3, 51:8, 75:1
**living** [3] - 43:1, 53:8, 63:13
**loaded** [2] - 17:2, 67:17
**located** [6] - 11:2, 15:6, 23:21, 31:9,

32:2
**location** [4] - 7:11, 7:16, 12:19, 28:5
**look** [2] - 39:14, 60:20
**looked** [1] - 22:1
**looking** [3] - 35:6, 58:17, 60:20
**looks** [4] - 56:22, 68:12, 71:8, 71:12
**lost** [1] - 36:20
**loud** [2] - 69:11, 77:6
**lower** [1] - 10:6
**lower-level** [1] - 10:6
**LRR** [1] - 1:4

**M**

**magistrate** [1] - 4:3
**Magistrate** [1] - 1:14
**manner** [1] - 10:13
**manufacture** [5] - 49:24, 55:21, 56:3, 56:6, 56:7
**March** [5] - 25:15, 45:11, 45:22, 46:5, 69:8
**marijuana** [8] - 59:6, 59:25, 61:10, 64:2, 64:12, 64:14, 64:20, 65:8
**married** [3] - 53:9, 63:14, 74:25
**marshals** [1] - 48:15
**material** [5] - 11:1, 13:11, 42:6, 52:10, 58:13
**materials** [1] - 34:18
**matter** [6] - 4:6, 4:9, 4:20, 40:8, 48:13, 79:5
**means** [1] - 79:9
**meats** [1] - 75:5
**medications** [1] - 43:23
**meet** [3] - 7:17, 11:22, 39:19
**meeting** [3] - 7:12, 7:16, 61:22
**members** [1] - 16:4
**memory** [2] - 13:25, 30:21
**Memphis** [3] - 8:6, 8:7, 8:9
**mental** [5] - 42:18, 43:9, 53:14, 63:20, 75:7
**mentioned** [1] - 25:4
**messages** [1] - 25:20, 25:22, 34:15
**met** [8] - 18:15, 18:17,

41:13, 48:4, 57:21, 66:17, 73:5, 78:3
**methadone** [5] - 14:1, 34:25, 43:21, 49:7, 52:14
**Mexico** [1] - 36:21
**microphone** [1] - 17:23
**might** [1] - 72:2
**mikes** [1] - 5:15
**millimeter** [1] - 67:17
**mind** [2] - 21:25, 34:1
**minor** [1] - 41:18
**mis** [1] - 21:8
**misdemeanor** [4] - 49:21, 50:2, 61:7, 61:9
**misdemeanors** [1] - 71:12
**Mississippi** [1] - 53:4
**Mitchell** [38] - 1:6, 2:8, 4:8, 4:15, 12:8, 12:18, 12:25, 14:15, 14:22, 15:1, 15:16, 21:20, 22:3, 22:4, 22:13, 26:23, 27:16, 27:19, 28:6, 28:10, 28:14, 48:19, 48:24, 49:3, 49:9, 49:10, 49:12, 49:14, 52:15, 53:3, 57:23, 58:11, 58:15, 62:15, 62:16, 62:18, 62:22, 72:2
**Mitchell's** [3] - 12:16, 13:18, 50:18
**Modern** [1] - 70:15
**moment** [1] - 48:12
**monitor** [1] - 21:4
**monitored** [1] - 7:20
**month** [5] - 19:4, 37:18, 43:19, 47:17, 47:25
**months** [16] - 45:10, 45:21, 50:7, 53:17, 54:8, 54:22, 55:1, 55:20, 56:8, 56:16, 66:10, 68:5, 72:23, 76:7, 76:9
**Moore** [2] - 28:20, 28:21
**most** [5] - 35:16, 50:5, 59:23, 71:16, 72:23
**mostly** [1] - 71:11
**mother** [6] - 32:12, 36:12, 43:3, 70:11, 70:17, 70:18
**motion** [4] - 48:8, 57:25, 66:20, 78:8
**motor** [2] - 59:14, 69:4
**moved** [7] - 36:21,

53:5, 53:7, 63:11, 69:3, 74:24, 76:21
**moving** [2] - 42:25, 60:14, 70:13
**MR** [36] - 4:25, 5:17, 5:20, 5:22, 5:24, 6:1, 6:10, 17:17, 21:16, 21:18, 22:16, 22:19, 24:23, 25:1, 25:3, 27:23, 28:1, 32:17, 32:20, 32:25, 33:2, 33:5, 33:12, 33:16, 33:19, 34:2, 48:20, 50:21, 58:5, 60:10, 66:23, 70:2, 78:14, 78:18, 78:20, 78:22
**MS** [13] - 5:13, 5:16, 17:19, 17:21, 17:24, 17:25, 21:13, 32:22, 33:8, 36:1, 48:11, 48:17, 78:16
**must** [3] - 51:22, 62:6, 62:7

## N

**name** [1] - 6:11
**narcotic** [2] - 41:17, 41:20
**narcotics** [6] - 8:24, 9:2, 21:3, 23:4, 44:20, 54:10
**nature** [9] - 34:10, 41:15, 47:3, 51:23, 57:6, 61:1, 65:19, 74:1, 77:9
**NE** [1] - 2:10
**near** [2] - 41:4, 51:17
**necessarily** [1] - 41:25
**needs** [2] - 48:13, 78:12
**never** [3] - 53:9, 63:14, 74:25
**new** [5] - 54:14, 54:18, 76:5, 76:15, 77:14
**New** [3] - 59:2, 59:3, 63:11
**Newark** [1] - 63:11
**next** [3] - 38:5, 64:5, 66:22
**nine** [2] - 36:10, 67:17
**nine-millimeter** [1] - 67:17
**noise** [2] - 69:11, 77:7
**nonetheless** [1] - 73:23
**normal** [2] - 16:3, 26:22
**NORTHERN** [1] - 1:1
**Northern** [2] - 4:2,

8:12
**Notary** [1] - 79:3
**note** [14] - 35:3, 36:6, 36:12, 36:17, 37:6, 37:18, 37:21, 37:25, 38:22, 49:11, 68:1, 69:15, 71:5, 73:12
**noted** [3] - 36:15, 50:9, 61:17
**notes** [2] - 79:8, 79:12
**nothing** [5] - 17:17, 21:13, 32:17, 32:20, 61:22
**notwithstanding** [1] - 47:24
**November** [10] - 8:5, 12:2, 34:21, 45:4, 45:17, 56:1, 76:8
**number** [6] - 4:9, 6:22, 9:20, 26:5, 50:10, 69:16
**numbers** [1] - 71:24

## O

**O'BRIEN** [8] - 5:17, 5:22, 22:19, 24:23, 33:2, 33:16, 60:10, 78:20
**O'Brien** [12] - 2:9, 4:18, 5:8, 5:14, 5:21, 22:17, 32:23, 33:1, 33:14, 60:9, 66:21, 78:19
**O'Brien.......** [1] - 3:7
**objection** [1] - 27:23
**obtain** [1] - 60:21
**obtaining** [1] - 34:25
**obviously** [6] - 41:23, 42:12, 52:5, 62:10, 65:22, 66:4
**occasions** [1] - 18:18
**occur** [1] - 14:17
**occurred** [8] - 38:2, 44:16, 50:12, 59:15, 59:23, 60:1, 69:7, 69:16
**occurring** [1] - 49:23
**October** [8] - 45:15, 46:2, 54:5, 55:15, 58:19, 60:19, 63:17, 76:3
**odd** [2] - 36:24, 43:8
**OF** [1] - 1:1
**offender** [5] - 59:21, 69:1, 69:7, 76:12, 76:14
**offense** [20] - 34:10, 34:11, 38:6, 40:24, 41:16, 46:20, 51:23,

58:22, 59:25, 61:1, 61:5, 61:19, 62:4, 65:3, 65:5, 65:9, 68:16, 74:2, 76:23
**offenses** [7] - 38:5, 51:25, 73:21, 74:3, 74:4, 77:14, 77:16
**offer** [5] - 5:4, 33:7, 33:11, 33:15, 33:18
**office** [3] - 8:5, 8:6, 36:4
**officer** [17] - 7:6, 34:23, 41:6, 42:2, 43:21, 47:8, 50:9, 52:2, 52:19, 53:17, 53:23, 58:20, 62:15, 63:16, 69:5, 69:19, 76:25
**officers** [7] - 19:11, 19:17, 30:13, 37:8, 39:21, 70:10
**official** [3] - 69:10, 71:13, 77:6
**often** [1] - 72:20
**Ohio** [1] - 42:24
**old** [7] - 38:3, 42:22, 53:4, 63:10, 63:25, 74:23, 75:15
**once** [1] - 37:10
**one** [28] - 4:22, 5:2, 9:12, 9:15, 12:21, 14:11, 23:23, 23:24, 26:10, 26:22, 29:24, 33:22, 38:18, 38:19, 41:3, 42:24, 44:10, 45:6, 51:17, 54:17, 61:17, 71:5, 72:17, 74:11, 75:1, 77:13
**one-year** [1] - 54:17
**operating** [5] - 59:14, 65:2, 65:5, 69:4, 76:22
**opiate** [1] - 43:23
**opine** [1] - 74:14
**opportunity** [1] - 33:25
**order** [2] - 5:5, 5:11
**ordered** [1] - 1:25
**orders** [1] - 78:10
**organization** [3] - 16:4, 26:12, 26:16
**outside** [1] - 8:24
**overall** [1] - 38:23
**overdose** [1] - 9:1
**overwhelming** [1] - 63:5
**OWI** [4] - 59:19, 71:11, 76:23, 77:2
**OWIs** [1] - 61:10
**own** [1] - 7:23

**owning** [1] - 72:11

## P

**package** [1] - 13:12
**packaging** [5] - 11:1, 13:11, 34:17, 42:6, 52:10, 58:13
**Page** [1] - 3:2
**pages** [1] - 79:11
**paraphernalia** [2] - 11:2, 42:7
**Park** [1] - 2:10
**parkway** [1] - 45:2
**parole** [23] - 45:12, 45:13, 45:15, 45:19, 45:23, 46:2, 46:5, 46:21, 50:7, 54:9, 56:17, 57:2, 57:12, 57:14, 68:19, 69:17, 75:23, 76:2, 76:3, 76:9, 76:13, 76:19, 77:15
**paroled** [9] - 45:10, 45:21, 54:7, 54:21, 56:15, 68:13, 68:22, 75:18, 76:6
**part** [3] - 20:15, 62:22, 65:16
**participant** [1] - 74:8
**participating** [1] - 22:5
**particular** [1] - 11:20
**particularly** [3] - 47:11, 57:9, 77:12
**parties** [1] - 4:24
**partners** [4] - 12:24, 13:1, 29:6, 62:16
**party** [2] - 28:9, 28:10
**past** [8] - 37:2, 43:12, 50:23, 53:15, 58:21, 63:21, 68:2, 70:19
**patrol** [1] - 54:12
**payment** [1] - 11:23
**PCP** [1] - 55:18
**pending** [19] - 4:23, 40:7, 40:10, 40:25, 44:24, 50:12, 51:21, 54:2, 54:15, 55:6, 55:8, 55:22, 55:25, 57:22, 66:19, 69:25, 70:7, 76:24, 78:4
**people** [4] - 9:15, 10:13, 10:16, 10:17
**per** [1] - 13:15
**perhaps** [1] - 48:15
**period** [4] - 11:25, 12:6, 50:25, 51:1
**person** [9] - 12:21, 26:12, 38:24, 39:5,

47:4, 57:7, 61:24, 65:20, 77:10
**personal** [1] - 30:14
**persuasion** [1] - 41:11
**phone** [13] - 7:8, 7:10, 12:13, 12:15, 26:1, 26:5, 26:7, 42:3, 52:3, 71:20, 71:21, 71:23, 71:25
**phones** [3] - 9:16, 12:12, 26:4
**photographs** [1] - 29:14
**physical** [1] - 42:18
**pick** [1] - 62:17
**picking** [1] - 61:24
**pill** [1] - 14:12
**Place** [1] - 2:10
**place** [3] - 34:17, 79:6, 79:7
**placement** [1] - 15:23
**Plaintiff** [1] - 1:4
**plan** [1] - 26:3
**player** [1] - 61:2
**plays** [1] - 38:25
**pocket** [1] - 13:23, 22:9, 52:13
**point** [3] - 50:23, 63:4, 67:13
**portion** [2] - 8:14, 62:11
**posed** [4] - 47:4, 57:7, 65:20, 77:10
**poses** [1] - 47:9
**possession** [52] - 15:2, 23:2, 23:5, 23:7, 35:10, 35:18, 44:11, 44:13, 44:22, 44:25, 45:2, 45:12, 46:11, 49:6, 49:16, 49:19, 49:22, 50:3, 50:6, 51:18, 53:25, 54:13, 54:16, 54:18, 54:19, 55:2, 55:4, 55:7, 55:11, 55:12, 55:18, 55:23, 56:1, 56:4, 56:10, 56:14, 59:6, 59:24, 61:10, 64:2, 64:12, 64:13, 64:19, 65:8, 68:17, 68:21, 72:7, 73:17, 76:2, 76:11, 76:14, 76:15
**possessions** [1] - 71:4
**potential** [2] - 9:2, 26:24
**practice** [1] - 44:4
**precise** [1] - 52:18
**precisely** [1] - 52:6

**predated** [1] - 20:3
**prepared** [3] - 4:24, 5:12, 5:19
**prescription** [2] - 43:22, 43:24
**present** [2] - 5:10, 58:14
**presented** [2] - 61:23, 63:6, 71:18
**presiding** [1] - 4:4
**presumably** [1] - 47:22
**presumption** [17] - 34:7, 40:20, 40:24, 41:7, 48:3, 48:22, 51:19, 57:19, 58:6, 66:12, 66:15, 66:24, 73:14, 73:16, 73:19, 73:22, 78:1
**pretrial** [12] - 34:23, 40:13, 43:20, 46:22, 46:25, 53:16, 53:22, 57:11, 57:13, 61:18, 63:16, 77:15
**Pretrial** [17] - 33:12, 34:4, 36:5, 36:17, 37:15, 38:14, 42:21, 43:16, 50:10, 50:14, 53:3, 58:17, 60:3, 63:9, 69:19, 70:21, 74:22
**pretty** [2] - 52:21, 72:3
**price** [1] - 7:11
**primarily** [2] - 12:21, 71:12
**print** [1] - 79:8
**prison** [28] - 31:20, 35:12, 45:6, 45:7, 45:9, 45:18, 46:13, 46:15, 50:7, 54:1, 54:7, 54:17, 56:15, 59:1, 59:4, 64:8, 64:16, 68:12, 68:18, 68:21, 69:1, 71:6, 75:18, 76:5, 76:10, 76:15, 76:16, 76:18
**probable** [5] - 40:22, 41:1, 41:6, 55:3, 73:20
**probation** [26] - 36:4, 38:9, 38:11, 46:21, 46:23, 46:25, 50:9, 56:2, 56:5, 56:8, 56:13, 57:2, 57:12, 57:14, 58:20, 59:10, 59:16, 61:16, 65:9, 65:12, 65:16, 69:17, 77:1, 77:4, 77:14
**problem** [1] - 37:17
**problems** [2] - 63:18,

75:8
**procedures** [2] - 52:20, 52:23
**proceed** [2] - 4:24, 5:12, 5:19
**proceeding** [2] - 46:18, 57:1
**proceedings** [5] - 1:10, 43:14, 65:24, 78:25, 79:7
**process** [2] - 7:3, 19:14
**produced** [2] - 6:6, 62:13
**production** [1] - 41:10
**productive** [1] - 74:14
**proffer** [1] - 33:12
**progress** [1] - 6:22
**prohibited** [1] - 64:7
**promptly** [1] - 32:15
**proof** [6] - 40:18, 48:4, 57:21, 66:17, 73:24, 78:3
**property** [1] - 42:5
**prosecuted** [8] - 44:7, 44:9, 44:21, 54:20, 55:13, 55:19, 56:4
**prosecutor** [1] - 36:15
**protection** [2] - 17:13, 67:22
**provide** [1] - 74:12
**Public** [2] - 2:5, 79:3
**public** [3] - 45:2, 69:5, 76:25
**purchase** [14] - 7:14, 7:18, 7:19, 7:21, 9:5, 11:22, 17:12, 26:13, 27:21, 28:3, 28:5, 28:7, 29:25, 42:10
**purchased** [4] - 16:12, 16:14, 17:11, 29:17
**purchases** [4] - 6:19, 7:1, 29:20, 29:23
**pure** [1] - 14:9
**purity** [1] - 23:25
**purported** [1] - 39:10
**purportedly** [2] - 19:22, 38:24
**purposes** [1] - 52:5

**Q**

**quantities** [6] - 7:25, 10:7, 11:16, 11:19, 23:20, 72:21
**quantity** [5] - 7:11, 14:9, 67:9, 67:10, 67:12
**questions** [2] - 22:16, 24:24

**R**

**raise** [1] - 6:4
**raised** [3] - 42:23, 63:10, 74:23
**raising** [1] - 36:9
**RAPIDS** [1] - 1:2
**Rapids** [7] - 1:11, 2:3, 2:6, 2:11, 2:13, 8:5, 8:15
**rarely** [1] - 30:2
**reached** [1] - 36:4
**Reade** [4] - 48:9, 58:1, 66:21, 78:9
**real** [1] - 62:18
**really** [3] - 20:25, 38:5, 72:14
**reason** [4] - 17:12, 36:20, 56:18, 77:22
**reasonably** [4] - 40:15, 50:17, 60:6, 69:22
**rebuttable** [15] - 34:7, 40:20, 40:24, 41:7, 48:2, 48:22, 51:19, 57:19, 58:6, 66:12, 66:15, 66:24, 73:15, 73:22, 78:1
**rebuttal** [2] - 73:13, 73:19
**receive** [1] - 38:4
**received** [23] - 35:12, 35:19, 38:9, 44:10, 46:12, 50:7, 55:10, 56:2, 56:10, 56:14, 58:24, 59:2, 59:4, 59:9, 59:21, 64:22, 65:9, 65:10, 68:11, 68:18, 68:20, 69:1, 76:15
**receiving** [2] - 34:19, 60:19
**recent** [5] - 35:16, 38:12, 50:5, 59:23, 71:10
**recently** [1] - 47:14
**record** [9] - 6:12, 43:14, 44:1, 45:25, 46:8, 53:20, 54:24, 65:23, 75:15
**recorded** [4] - 25:7, 29:9, 31:13, 73:2
**recovered** [1] - 58:12
**reduced** [1] - 79:8
**refer** [1] - 38:1
**reference** [1] - 20:5
**refers** [1] - 38:15
**regard** [5] - 29:8, 40:19, 71:15, 72:13, 78:4

**regarding** [5] - 21:19, 22:2, 41:10, 41:24, 53:3
**regards** [1] - 19:19
**register** [2] - 76:12, 76:17
**registered** [1] - 31:5
**registry** [1] - 69:1
**regular** [3] - 70:24, 74:8, 77:20
**regularly** [1] - 75:11
**reinstate** [7] - 44:4, 46:1, 46:9, 54:12, 54:25, 75:22, 75:25
**related** [2] - 48:25, 51:25
**relates** [1] - 72:8
**relating** [4] - 14:15, 34:15, 41:20, 43:12
**relation** [1] - 73:17
**relationship** [2] - 12:23, 75:1
**relative** [2] - 12:16, 15:23
**relatively** [1] - 34:1
**release** [13] - 46:22, 46:25, 47:5, 57:8, 57:12, 57:14, 65:21, 66:4, 66:8, 69:17, 77:11, 77:15, 77:18
**released** [11] - 31:23, 36:25, 40:10, 60:21, 62:2, 69:24, 70:16, 70:19, 73:8, 73:10, 76:10
**releasing** [1] - 40:6
**relevance** [1] - 27:24
**rely** [1] - 34:3
**relying** [1] - 20:12
**remained** [1] - 50:12
**remains** [1] - 41:12
**remember** [1] - 21:22
**repeatedly** [2] - 57:10, 77:13
**Report** [17] - 33:13, 34:4, 36:5, 36:18, 37:15, 38:14, 42:22, 43:16, 50:10, 50:15, 53:3, 58:18, 60:3, 63:9, 69:19, 70:21, 74:22
**report** [3] - 38:2, 61:18, 71:9
**reported** [1] - 68:2
**Reporter** [3] - 79:3, 79:5, 79:21
**reports** [4] - 20:6, 20:17, 20:23, 58:20
**represented** [5] - 4:11, 4:13, 4:16, 4:17,

4:19
**requested** [1] - 70:10
**required** [13] - 40:16, 41:21, 42:16, 43:11, 46:19, 47:2, 52:1, 57:5, 63:7, 65:18, 74:1, 74:4, 77:8
**requires** [1] - 40:14
**resale** [1] - 67:12
**residence** [10] - 10:19, 16:19, 18:2, 18:5, 36:8, 52:8, 58:12, 60:15, 62:23, 62:24
**residing** [1] - 12:19
**resolution** [1] - 40:7
**resolved** [1] - 48:14
**resources** [1] - 42:19
**respect** [3] - 27:12, 53:1, 74:16
**respectfully** [2] - 38:16, 40:5
**respond** [1] - 33:25
**restrictive** [1] - 40:1
**restroom** [1] - 48:13
**retail** [4] - 35:16, 45:14, 45:16, 45:19
**retrieve** [1] - 15:11
**return** [1] - 36:11
**reveal** [1] - 62:24
**revealed** [1] - 52:9
**review** [4] - 48:8, 57:25, 66:20, 78:8
**reviewed** [1] - 51:12
**reviewing** [1] - 61:17
**revocation** [1] - 50:8
**revoked** [6] - 45:19, 56:18, 68:13, 68:19, 76:4, 76:13
**rise** [5] - 4:1, 47:1, 57:3, 65:16, 78:24
**risk** [9] - 9:1, 35:23, 36:3, 47:9, 51:10, 60:12, 70:3, 73:6
**robbery** [2] - 59:1, 64:6
**Rochester** [5] - 1:6, 4:8, 12:8, 29:5, 48:19
**roles** [2] - 12:16, 38:24
**rough** [1] - 25:10
**roughly** [2] - 20:10, 35:8
**ruckus** [2] - 69:11, 77:6

**S**

**safety** [4] - 40:16, 50:18, 60:7, 69:23

**sale** [2] - 49:17, 54:3
**sales** [4] - 11:10, 13:12, 68:7, 72:23
**Sapp** [42] - 1:6, 2:11, 4:8, 4:17, 12:9, 12:18, 12:19, 14:15, 14:22, 15:11, 15:16, 22:13, 22:21, 23:10, 24:9, 24:13, 24:19, 29:3, 52:15, 58:3, 58:8, 58:11, 58:14, 58:18, 58:23, 59:5, 59:11, 59:18, 60:6, 60:8, 60:11, 61:25, 62:9, 62:12, 62:14, 62:15, 62:17, 62:22, 65:14, 66:14, 66:18
**Sapp's** [6] - 12:16, 13:4, 58:12, 62:19, 62:20, 62:23
**Sarah** [1] - 79:20
**saw** [1] - 38:7
**scene** [1] - 7:20
**scheduled** [1] - 4:20
**school** [3] - 41:4, 45:1, 51:17
**Scoles** [2] - 1:14, 4:4
**scope** [2] - 20:13, 39:10
**Scott** [36] - 1:6, 2:6, 4:8, 4:13, 9:12, 10:6, 11:9, 12:3, 18:10, 18:21, 19:3, 19:7, 20:18, 26:23, 27:13, 27:14, 33:24, 34:15, 34:18, 35:3, 36:3, 36:6, 36:15, 37:6, 37:11, 37:17, 38:3, 38:13, 38:25, 39:5, 39:18, 39:25, 40:4, 40:6, 48:6
**Scott's** [7] - 10:3, 10:19, 12:13, 18:2, 37:24, 38:16, 39:17
**SE** [3] - 2:3, 2:5, 2:13
**search** [32] - 10:18, 10:25, 11:1, 12:2, 13:3, 13:10, 13:17, 13:22, 16:18, 16:21, 16:24, 17:22, 18:1, 18:7, 22:7, 23:9, 24:14, 24:22, 25:24, 26:3, 30:6, 32:4, 34:17, 47:19, 49:6, 52:8, 58:11, 61:20, 62:24, 67:14, 70:5, 72:9
**searched** [5] - 7:12, 7:22, 7:23, 42:6, 69:13

**seated** [2] - 4:5, 6:8
**second** [8] - 45:2, 45:7, 54:18, 59:25, 65:1, 65:5, 65:9, 77:19
**section** [6] - 40:12, 40:20, 41:14, 51:19, 62:6, 62:8, 73:11, 73:25, 78:2
**seem** [1] - 38:20
**seize** [1] - 8:7
**seized** [5] - 8:1, 8:14, 30:8, 71:22, 72:9
**sell** [1] - 14:9
**selling** [6] - 11:15, 11:17, 12:18, 12:22, 34:19, 62:23
**sent** [4] - 45:18, 54:1, 64:7, 64:16
**sentence** [7] - 35:12, 35:20, 38:4, 38:8, 46:13, 56:11, 65:11
**sentenced** [6] - 45:5, 45:7, 54:6, 64:9, 75:17, 76:5
**September** [2] - 24:6, 25:14, 45:22, 75:20, 76:1, 77:1
**serious** [6] - 37:25, 40:3, 40:23, 61:2, 71:16, 75:14
**seriousness** [4] - 47:3, 57:6, 65:19, 77:9
**served** [2] - 23:13, 64:21
**serves** [1] - 30:21
**services** [5] - 34:23, 43:21, 53:17, 53:22, 63:16
**Services** [17] - 33:13, 34:4, 36:5, 36:18, 37:15, 38:14, 42:22, 43:16, 50:10, 50:15, 53:3, 58:18, 60:3, 63:9, 69:19, 70:21, 74:22
**session** [1] - 4:3
**set** [8] - 39:24, 40:3, 41:14, 62:6, 62:7, 73:11, 73:24, 79:14
**seven** [12] - 15:14, 16:22, 25:16, 30:7, 36:8, 49:5, 51:4, 54:8, 58:15, 67:16, 72:8
**seven-year-long** [1] - 51:4
**several** [4] - 10:7, 18:13, 37:2, 68:5

**severity** [1] - 40:5
**sex** [3] - 68:25, 76:12, 76:17
**sexual** [4] - 68:10, 71:2, 75:16, 76:4
**shoplifting** [2] - 58:25, 64:1
**shorthand** [3] - 79:7, 79:8, 79:12
**Shorthand** [3] - 79:2, 79:5, 79:21
**show** [3] - 37:13, 61:12, 62:3
**showing** [1] - 73:6
**shown** [3] - 48:24, 58:8, 67:4
**sic** [1] - 30:24
**significant** [5] - 12:6, 37:19, 47:18, 50:24, 60:23
**similar** [1] - 36:4
**simply** [1] - 61:24
**single** [2] - 53:9, 74:25
**sisters** [1] - 43:5
**situation** [1] - 23:18
**six** [10] - 11:22, 34:19, 45:10, 45:21, 50:23, 55:16, 56:19, 58:21, 63:22
**sleeping** [1] - 14:12
**slightly** [1] - 8:7
**slips** [1] - 21:25
**small** [2] - 62:10
**snapshot** [1] - 74:6
**so-called** [1] - 74:10
**sold** [2] - 28:15
**solicitation** [1] - 44:20, 54:10
**soliciting** [2] - 55:9, 55:13
**someone** [2] - 28:6, 67:2
**sometime** [1] - 53:12
**somewhat** [2] - 67:1, 74:16
**son** [1] - 51:9
**sorry** [3] - 21:8, 24:3, 38:19
**sort** [3] - 16:5, 46:24, 74:8
**source** [5] - 10:7, 16:5, 26:24, 72:17, 74:10
**sources** [1] - 16:3
**speaking** [1] - 19:17
**special** [1] - 4:11
**specific** [1] - 9:11
**specifically** [1] - 55:22
**spell** [1] - 6:11
**spending** [1] - 21:5

**spent** [1] - 68:12
**stable** [2] - 36:11, 37:1
**standard** [1] - 51:11
**standards** [1] - 62:5
**started** [1] - 75:11
**State** [1] - 79:3
**state** [3] - 6:11, 38:7, 47:23
**statement** [1] - 73:2
**statements** [3] - 22:10, 23:15, 63:2
**STATES** [1] - 1:1
**States** [15] - 1:3, 4:1, 4:7, 4:12, 6:1, 34:3, 34:12, 35:22, 35:24, 40:11, 49:11, 50:16, 60:4, 69:15, 69:20
**station** [1] - 62:18
**steadily** [2] - 36:18, 70:13
**steady** [4] - 51:3, 53:11, 60:15, 60:18
**step** [2] - 6:3, 33:3
**stepping** [1] - 49:4
**steps** [2] - 37:19, 39:11
**still** [5] - 34:1, 56:8, 75:23, 76:2, 76:24
**stocking** [1] - 30:1
**stop** [2] - 15:12, 37:19
**stopped** [1] - 53:17
**straw** [1] - 9:5
**Street** [4] - 2:3, 2:5, 2:8, 2:13
**street** [3] - 17:12, 43:25, 67:23
**strength** [1] - 71:15
**stricken** [12] - 38:21, 44:3, 44:7, 45:24, 45:25, 46:8, 54:11, 54:24, 75:21, 75:24
**strike** [1] - 57:20
**strong** [7] - 34:13, 36:15, 42:15, 49:9, 52:25, 74:14, 74:20
**stronger** [1] - 74:16
**struck** [1] - 57:10
**Stuart** [1] - 4:4
**stucco** [1] - 75:6
**subject** [6] - 11:20, 11:22, 12:1, 27:20, 31:16, 67:14
**Suboxone** [1] - 43:22
**substance** [26] - 34:11, 35:11, 44:12, 44:14, 44:22, 45:1, 45:3, 48:23, 49:16, 49:18, 49:22, 49:25, 53:25, 54:4, 54:16, 54:19, 55:2, 55:21,

59:6, 59:24, 61:18, 64:20, 65:8, 68:21, 70:20, 71:6

**substances** [5] - 58:7, 66:5, 66:9, 66:25, 77:24

**substantial** [3] - 47:13, 49:14, 63:4

**successfully** [2] - 38:11, 61:15

**sufficient** [1] - 37:13

**Suite** [4] - 2:3, 2:5, 2:10, 2:13

**sum** [1] - 39:23

**supervision** [4] - 44:10, 44:17, 50:13, 79:9

**suppliers** [2] - 26:17, 26:22

**supply** [3] - 10:8, 10:16, 16:3

**supplying** [2] - 10:6, 10:9

**support** [3] - 36:23, 37:5, 42:4

**surrendered** [1] - 70:9

**surveillance** [4] - 7:19, 9:23, 10:1, 12:14

**surveilled** [1] - 7:20

**suspended** [7] - 35:20, 38:8, 46:13, 59:9, 59:22, 64:22, 65:11

**sustained** [1] - 27:25

**sworn** [1] - 6:6

**system** [1] - 50:25

---

### T

**tannery** [1] - 36:19

**tape** [1] - 25:7

**tape-recorded** [1] - 25:7

**tapped** [1] - 9:16

**taps** [1] - 71:20

**target** [6] - 7:9, 7:17, 47:22, 66:3, 66:11, 77:21

**targets** [1] - 9:12

**Task** [1] - 20:6

**task** [2] - 15:6, 41:5

**telephone** [2] - 9:21, 10:2

**telephones** [1] - 6:23

**ten** [13] - 13:11, 13:13, 16:14, 23:21, 23:23, 29:16, 36:9, 52:9, 58:12, 59:1, 62:24, 68:11, 71:4

**Tennessee** [2] - 8:9, 8:11

**term** [9] - 38:10, 46:16, 54:7, 54:17, 56:15, 64:8, 64:23, 76:15, 76:16

**terms** [6] - 38:12, 39:25, 40:7, 57:11, 57:17, 77:17

**testified** [10] - 6:7, 17:22, 18:1, 18:9, 19:24, 37:6, 39:15, 47:8, 52:19, 73:3

**testimony** [18] - 34:5, 37:16, 38:22, 38:25, 41:5, 41:24, 48:23, 50:15, 52:11, 58:7, 60:3, 62:17, 62:22, 67:8, 69:20, 72:3, 74:7, 74:17

**text** [5] - 25:20, 25:22, 34:14

**THE** [44] - 1:1, 1:1, 4:1, 4:5, 5:1, 5:14, 5:18, 5:21, 5:23, 5:25, 6:3, 6:8, 17:18, 17:23, 21:15, 22:17, 24:25, 27:25, 32:19, 32:21, 32:23, 33:1, 33:3, 33:6, 33:10, 33:14, 33:17, 33:20, 35:25, 40:9, 48:16, 48:18, 50:20, 51:11, 60:9, 62:5, 70:1, 73:9, 78:15, 78:17, 78:19, 78:21, 78:23, 78:24

**theft** [5] - 35:16, 45:14, 45:16, 45:19, 46:16

**themselves** [2] - 7:16, 37:5

**thereabouts** [2] - 24:6, 25:14

**therefore** [1] - 66:18

**they've** [2] - 27:10, 39:9

**Third** [2] - 2:5, 2:13

**third** [2] - 28:9, 28:10

**thousands** [2] - 25:13, 71:19

**three** [25] - 18:16, 22:12, 22:14, 35:12, 42:24, 45:5, 45:8, 45:20, 49:2, 51:16, 52:16, 54:1, 56:24, 58:10, 59:4, 62:10, 64:16, 66:14, 70:25, 71:1, 73:13, 73:18, 74:24, 75:12

**three-year** [1] - 35:12

**throughout** [1] - 10:5

**tie** [2] - 72:2, 72:4

**ties** [8] - 36:13, 36:14, 42:19, 60:12, 60:22, 70:12, 71:18

**Title** [3] - 24:5, 40:11, 58:9

**today** [18] - 4:21, 6:15, 34:5, 37:16, 38:22, 39:15, 48:24, 58:7, 60:4, 61:23, 62:11, 63:6, 67:4, 67:8, 69:20, 73:4, 74:7, 78:10

**tomorrow** [1] - 78:11

**took** [2] - 28:6, 79:6

**total** [1] - 25:8

**trafficking** [4] - 21:3, 34:16, 38:6, 73:17

**training** [1] - 8:19

**transaction** [1] - 67:6

**transactions** [4] - 14:15, 14:23, 49:3, 58:10

**transcript** [1] - 79:11

**Transcript** [3] - 1:10, 1:25, 1:25

**transcription** [1] - 79:10

**transportation** [1] - 10:15

**transported** [1] - 7:15

**transporting** [1] - 15:8

**transports** [1] - 7:16

**traveling** [1] - 15:10

**treat** [1] - 43:23

**treatment** [1] - 61:19

**trespass** [1] - 75:24

**tri** [2] - 15:6, 20:6

**tri-county** [2] - 15:6, 20:6

**trial** [10] - 4:20, 4:23, 40:10, 40:25, 41:23, 51:21, 57:22, 66:19, 69:25, 78:5

**tried** [1] - 36:23

**triggered** [1] - 41:7

**trouble** [1] - 61:14

**true** [4] - 11:14, 28:17, 29:7, 31:4

**try** [1] - 5:2

**trying** [2] - 36:25, 37:1

**Tupperware** [1] - 30:19

**turn** [5] - 19:10, 30:6, 37:7, 39:21, 62:4

**turned** [2] - 32:3, 32:14

**twice** [5] - 44:2, 44:6, 44:8, 44:19, 64:20

**two** [41] - 8:8, 9:7, 11:21, 12:23, 13:15, 14:11, 16:14, 18:15, 23:22, 29:24, 36:9, 38:20, 41:20, 43:2, 45:7, 53:17, 54:6, 54:22, 56:15, 56:23, 59:7, 59:8, 65:9, 65:11, 66:13, 67:7, 68:3, 68:13, 68:18, 69:1, 69:9, 69:12, 69:13, 70:25, 71:4, 75:13, 76:5, 76:16, 77:12

**two-year** [2] - 54:6, 76:16

**tying** [1] - 73:1

**type** [4] - 11:19, 23:17, 23:20, 61:5

**types** [3] - 61:7, 61:9, 72:25

**typical** [4] - 29:19, 29:22, 67:10

**typically** [1] - 14:12

**Tyson** [2] - 51:4, 75:5

**Tyson's** [2] - 24:20, 60:17

---

### U

**UC** [1] - 7:21

**uncovered** [1] - 27:8

**under** [10] - 8:8, 9:7, 18:21, 24:14, 34:8, 37:11, 40:1, 44:17, 50:13, 79:8

**undercover** [1] - 7:6

**undersigned** [1] - 79:2

**understood** [2] - 26:19, 52:11

**unemployed** [7] - 35:4, 35:5, 43:6, 49:12, 53:11, 58:18, 63:15

**unemployment** [2] - 51:6, 60:19

**unit** [1] - 9:3

**UNITED** [1] - 1:1

**United** [15] - 1:3, 4:1, 4:7, 4:12, 6:1, 34:3, 34:12, 35:21, 35:23, 40:11, 49:11, 50:16, 60:4, 69:15, 69:20

**units** [1] - 9:9

**unknown** [5] - 46:4, 53:22, 55:14, 64:4, 64:10

**unlawful** [6] - 35:9, 44:8, 44:17, 47:6, 55:9, 55:14

**unlike** [1] - 67:1

**unlikely** [1] - 66:7

**unspecified** [1] - 64:3

**unwittingly** [1] - 27:20

**up** [12] - 24:1, 24:5, 30:1, 32:9, 47:17, 47:25, 61:12, 61:24, 62:18, 63:22, 66:1, 74:10

**US** [1] - 2:2

**USA** [1] - 2:3

**user** [21] - 9:9, 10:6, 12:4, 17:15, 23:17, 23:20, 29:19, 29:22, 43:15, 43:19, 53:15, 58:21, 61:3, 63:21, 67:9, 67:10, 68:2, 70:24, 75:9, 75:13

**user-type** [1] - 23:20

**users** [6] - 9:5, 10:9, 15:16, 26:17, 26:20, 29:25

**uses** [2] - 8:24, 52:23

---

### V

**vague** [1] - 72:3

**vehicle** [3] - 7:23, 59:14, 69:5

**versus** [1] - 4:7

**victim** [1] - 41:18

**video** [1] - 29:12

**violation** [1] - 68:25

**violence** [2] - 39:2, 41:17

**violent** [3] - 38:15, 39:5, 61:5

**voluntarily** [1] - 18:17

**vs** [1] - 1:5

---

### W

**warrant** [22] - 12:2, 13:3, 13:10, 16:21, 19:2, 23:9, 23:13, 24:14, 24:22, 25:24, 26:3, 30:7, 32:6, 32:10, 34:17, 37:9, 61:21, 64:21, 67:15, 70:5, 70:8, 72:9

**warrants** [4] - 10:18, 16:18, 32:4, 47:19

**Wassmer** [10] - 2:12, 4:19, 5:9, 5:23, 24:25, 33:17, 70:1, 75:10, 78:9, 78:21

**WASSMER** [8] - 5:24, 25:1, 25:3, 28:1,

32:17, 33:19, 70:2, 78:22

**Wassmer.......** [1] - 3:8

**waterloo** [1] - 36:20

**Waterloo** [27] - 10:8, 11:15, 12:20, 15:7, 15:11, 20:7, 36:7, 36:10, 36:13, 36:22, 38:6, 38:7, 42:25, 43:3, 51:1, 51:8, 53:7, 60:12, 60:16, 60:25, 63:11, 63:14, 70:13, 70:18, 74:24, 75:12

**Waterloo/Cedar** [1] - 8:15

**weak** [1] - 74:14

**weapon** [1] - 64:7

**Webb** [2] - 2:12, 4:19

**week** [1] - 25:16

**weeks** [6] - 35:1, 37:2, 56:20, 68:3, 71:1, 75:13

**weight** [9] - 34:11, 41:21, 42:1, 42:14, 49:8, 52:1, 52:23, 63:3, 74:5

**whatsoever** [2] - 37:10, 37:12

**WHEREOF** [1] - 79:14

**whole** [4] - 9:8, 60:25, 72:5, 72:14

**wife** [4] - 36:9, 37:3, 37:21, 43:2

**willing** [1] - 70:15

**willingly** [1] - 39:22

**wire** [1] - 9:21

**wiretap** [7] - 6:22, 6:25, 9:18, 9:24, 24:1, 24:4, 39:2

**wiretapped** [1] - 42:3

**wiretaps** [7] - 12:10, 15:21, 24:10, 25:5, 25:18, 48:25, 67:3

**WITNESS** [1] - 79:14

**Witness** [1] - 3:2

**witness** [1] - 73:3

**witnesses** [1] - 5:5

**works** [1] - 37:3

**Worley** [4] - 30:17, 31:10, 31:15, 31:19

**written** [1] - 78:10

## Y

**year** [18] - 18:20, 22:3, 35:12, 36:19, 42:24, 44:10, 51:4, 51:5, 54:6, 54:17, 59:10, 63:17, 64:5, 69:8, 69:10, 70:19, 72:22, 76:16

**years** [52] - 24:19, 36:7, 36:9, 38:3, 38:9, 42:22, 42:25, 45:5, 45:6, 45:8, 50:24, 51:1, 53:4, 53:7, 53:16, 54:1, 56:2, 58:21, 59:1, 59:4, 60:13, 60:15, 60:17, 63:10, 63:12, 63:22, 63:25, 64:16, 65:9, 65:11, 68:3, 68:11, 68:13, 68:18, 68:20, 69:1, 70:24, 70:25, 71:3, 71:5, 71:7, 74:23, 74:24, 75:11, 75:12, 75:15, 75:17, 75:19, 76:5

**yesterday** [1] - 22:1